**STATE of Tennessee**

v.

**Jerry LANIER.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 8, 2000.

Steve McEwen, Mountain City, Tennessee and H. Tod Taylor, Assistant District Public Defender, Dyersburg, Tennessee, for the appellant, Jerry Lanier.

Paul G. Summers, Attorney General and Reporter, Kim R. Helper, Assistant Attorney General, C. Phillip Bivens, District Attorney General, James E. Lanier, Assistant District Attorney General, and Karen Waddell Burns, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH, and JAMES CURWOOD WITT, Jr., JJ., joined.

The Defendant entered a plea of nolo contendere to the charge of retaliation for past action, reserving a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(i). The trial court sentenced him to one year incarceration and ordered that the sentence run consecutively to previously imposed sentences. In this appeal, the Defendant presents his reserved certified question of law: whether Tennessee Code Annotated § 39–16–510, the statute under which he was convicted, is constitutional. We hold that the statute is constitutional and accordingly affirm the Defendant's conviction.

On June 14, 1999, the Dyer County Grand Jury indicted the Defendant, Jerry Lanier, on one count of possession of a controlled substance in a penal institution and on one count of retaliation for past action. On August 27, 1999, the Defendant entered a plea of nolo contendere to the charge of retaliation for past action, and the trial court dismissed the charge of possession of a controlled substance in a penal institution. As part of his plea agreement, the Defendant reserved a certified question of law regarding the constitutionality of Tennessee Code Annotated § 39–16–510, the statute governing the offense of retaliation for past action. The trial court sentenced him as a Range I standard offender to one year in the Department of Correction and ordered that the sentence run consecutively to previously imposed sentences. The Defendant now appeals, presenting his reserved certified question of law for our review: whether Tennessee Code Annotated § 39–16–510 is constitutional.

Although the record in this case contains limited information concerning the factual basis for the Defendant's plea, it appears that the Defendant's current conviction for retaliation for past action stemmed from an incident which occurred on May 3, 1999.[1] On that day, the Defendant apparently appeared in the Dyer County General Sessions Court on unrelated charges, and the General Sessions judge set the Defendant's bond at $50,000. While being transported with another inmate to the Dyer County Jail after appearing in court, the Defendant told the deputy driving the patrol unit in which he was riding that the judge was "crazy" for setting a high bond. He also told the deputy that he was going

---

1. We have gleaned the facts in this case from the briefs of the parties, a Motion for a Bill of Particulars filed by the Defendant, a Response to a Motion for a Bill of Particulars filed by the State, and from the transcript of the guilty plea proceeding.

to shoot the judge and asked the deputy to tell the judge that he planned to do so.

The Defendant challenges the constitutionality of Tennessee Code Annotated § 39–16–510, the statute under which he was convicted. He argues that the statute violates the free speech clauses of the United States and Tennessee Constitutions. *See* U.S. Const. amend. I; Tenn. Const. art. I, § 19. Specifically, he contends that the statute is not narrowly drawn to advance the State's interest and that it is impermissibly overbroad.

Tennessee Code Annotated § 39–16–510 provides as follows:

(a) A person commits the offense of retaliation for past action who harms or threatens to harm a witness at an official proceeding, judge, clerk, juror or former juror by any unlawful act in retaliation for anything the witness, judge, clerk, or juror did in an official capacity as witness, judge, clerk, or juror. The offense of retaliation for past action shall not apply to an employee of a clerk who harms or threatens to harm such clerk.

(b) A violation of this section is a Class E felony.

The First Amendment to the United States Constitution states that "Congress shall make no law ... abridging the freedom of speech, or of the press ...." This provision is applicable to the states through the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Similarly, Article I, § 19 of the Tennessee Constitution provides that "[t]he free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write, and print

on any subject, being responsible for abuse of that liberty."

 The Defendant first argues that the statute in question is not narrowly drawn and is not the least restrictive means to further the State's interest in protecting judges and others involved in the judicial process from harm.[2] Generally, the First Amendment prohibits governmental proscription of speech based upon disapproval of the ideas expressed through the speech. *R.A.V. v. City of St. Paul, Minn.* 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Regulations based on the content of speech are presumptively invalid. *Id.* Such a regulation may be upheld only if the State can show that "the burden placed on free speech rights is justified by a compelling State interest," that the "least intrusive means" is used by the State to achieve its goals, and that the means chosen to achieve the goals "bear[s] a substantial relation to the interest being served by the statute in question." *Bemis Pentecostal Church v. State,* 731 S.W.2d 897, 903 (Tenn.1987); *see also State v. Smoky Mountain Secrets, Inc.,* 937 S.W.2d 905, 911 (Tenn.1996).

 However, the United States Supreme Court has emphasized that

the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has

---

**2.** The Defendant concedes that the State's interest in enacting this legislation is compelling.

been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (citations omitted). Threats of violence do not fall within the parameters of constitutionally protected speech because of the government's interest in "protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *R.A.V.,* 505 U.S. at 388, 112 S.Ct. 2538; *see also Watts v. United States,* 394 U.S. 705, 707–08, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). Furthermore, the government may regulate or completely ban speech proposing illegal activity. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 496, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). However, statutes which regulate unprotected speech must be "carefully drawn or authoritatively construed to punish only unprotected speech and [must] not be susceptible of application to protected expression." *Gooding v. Wilson,* 405 U.S. 518, 522, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

▮▮▮▮▮ The Defendant also argues that the statute at issue is overbroad.[3] " 'Overbreadth' is a judicially created doctrine designed to prevent the chilling of protected expression. The doctrine of over-

breadth derives from the recognition that an unconstitutional restriction of expression may deter protected speech by parties not before the court and thereby escape judicial review." 16A Am.Jur.2d *Constitutional Law* § 411 (1998). In other words, a statute is overbroad if it "inhibits the First Amendment rights of other parties." *Village of Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. 1186. The United States Supreme Court has "cautioned that the doctrine of overbreadth is 'strong medicine' to be used 'sparingly and only as a last resort.' " *State v. Lakatos,* 900 S.W.2d 699, 701 (Tenn.Crim.App.1994) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). "[T]o succeed in a challenge based on overbreadth a defendant must demonstrate from the text of the law and actual fact that there are a substantial number of instances where the law cannot be applied constitutionally." *State v. Lyons,* 802 S.W.2d 590, 593 (Tenn.1990); *see also Village of Hoffman Estates,* 455 U.S. at 494, 102 S.Ct. 1186. Because the First Amendment prevents states from punishing "the use of words or language not within 'narrowly limited classes of speech,' " *Gooding,* 405 U.S. at 521–22, 92 S.Ct. 1103 (quoting *Chaplinsky,* 315 U.S. at 571, 62 S.Ct. 766), a statute must be narrowly drawn so as "to punish only unprotected speech and not be susceptible of application to protected expression." *Id.* at 522, 92 S.Ct. 1103.

Applying these principles to the case at hand, Tennessee Code Annotated § 39–16–

---

**3.** The State contends that the Defendant's challenge of Tennessee Code Annotated § 39–16–510 on grounds of overbreadth does not fall within the scope of the reservation of the certified question of law. Although the Defendant did not specifically challenge the statute at issue as being overbroad in the order reserving his certified question of law, he did challenge the statute generally as "violative of

the free speech clauses of the United States and Tennessee Constitutions." We will therefore address the Defendant's argument concerning overbreadth.

Furthermore, in the order reserving his certified question of law, the Defendant contended that the statute is also vague. However, he does not now raise this issue for our review.

510 seeks to prohibit threats of violence against specific individuals involved in the judicial process. As previously stated, threats of violence are not a form of protected speech. *See R.A.V.*, 505 U.S. at 388, 112 S.Ct. 2538; *Watts*, 394 U.S. at 707–08, 89 S.Ct. 1399. We believe that the speech proscribed by Tennessee Code Annotated § 39–16–510, namely "threaten[ing] to harm ... [a] witness, judge, clerk, or juror," enjoys no First Amendment protection. Nor does the statute at issue implicate any other constitutionally protected right. The statute is narrowly drawn to punish only unprotected speech; it prohibits only threats of violence. Moreover, the Defendant has not shown that "there are a substantial number of instances where the law cannot be applied constitutionally." *Lyons*, 802 S.W.2d at 593.

The Defendant suggests, however, that the statute is overbroad because it "does not require a likelihood that the threats to harm will produce the unlawful activity." He argues that because he was restrained in the back of a patrol car at the time he made the threat, there was no likelihood that he would actually shoot the judge. Federal courts have concluded that "[t]he prosecution need not prove that the defendant had the ability or actually intended to carry out [a] threat." *Melugin v. Hames*, 38 F.3d 1478, 1485 (9th Cir.1994) (citing *United States v. Khorrami*, 895 F.2d 1186, 1192–93 (7th Cir.1990)). Likewise, we believe that there is no necessity for the State to prove that threats of harm made in contravention of Tennessee Code Annotated § 39–16–510 are likely to produce unlawful activity.

We conclude that Tennessee Code Annotated § 39–16–510 does not infringe on the privilege of free speech and that it is therefore constitutional. Accordingly, we AFFIRM the judgment of the trial court.