IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 22, 2003

## STATE OF TENNESSEE v. KENNETH LEE ENGLAND

**Appeal from the Criminal Court for Campbell County**
**No. 10792     E. Shayne Sexton, Judge**

---

**No. E2002-00693-CCA-R3-CD**
**April 11, 2003**

---

The defendant, Kenneth Lee England, was convicted by a Campbell County Criminal Court jury of retaliation for past action, a Class E felony, and the trial court sentenced him as a career offender to six years in the Department of Correction. The defendant appeals, claiming that the evidence is insufficient and that the trial court erred by allowing the state to impeach him with his prior retaliation for past action convictions under Tenn. R. Evid. 609. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal); Martha J. Yoakum, District Public Defender; and Charles Albert Herman, Assistant District Public Defender (at trial), for the appellant, Kenneth Lee England.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; William Paul Phillips, District Attorney General; and Michael O. Ripley, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a threat the defendant made against his ex-wife. The record reflects that in 1992, the defendant pled guilty to two counts of sexual battery. While he was serving time in confinement for those crimes, he sent his wife threatening letters. He was charged with three counts of retaliation for past action, pled guilty to the charges, and received an effective sentence of four years in a community corrections program. Bob Walden, the defendant's community corrections officer, testified that he supervised the defendant. He said the defendant was bitter, hostile, and very resentful toward the program. He said, though, that the defendant's bitterness was not uncommon. He said that during his first meeting with the defendant, he and the defendant went over twenty-five

"points" in the defendant's community corrections behavioral contract and that the defendant disagreed with all of them. He said that during his second meeting with the defendant on April 4, 2001, the defendant stated the following:

> Do you know why I'm on this program; why am I on Community Corrections to start with? . . . I'm on Community Corrections because I wrote my wife some letters from prison. . . . Do you want to know something else? . . . I beat her brains out for 15 years and nobody ever did anything; nothing ever happened, and I'll get Community Corrections for writing letters to her. . . . I'm gonna tell you what kept me going for five and a half years was the thoughts of killing my ex-wife and getting away with it, and that's what's keeping me going now, and I'm gonna do it; not now, I'm gonna wait, but one of these days I'm gonna do it.

Mr. Walden testified that immediately after the conversation, he wrote down what the defendant had said verbatim and reported it to his supervisor. On cross-examination, he testified that he did not tell the defendant's ex-wife about the threats.

Vicky England, the defendant's ex-wife, testified that she divorced the defendant in 1993. She said that after the divorce, the defendant sent her fifty to seventy-five threatening letters. She made copies of the letters and sent them to the defendant's probation officers, the parole board, the prison warden, the Postmaster General, the district attorney's office, the police and sheriff's departments, and "anybody and everybody that I could get to listen to me." She said that as a result of the letters, the defendant was charged with retaliation for past action. She acknowledged that she also had been subpoenaed as a witness in the defendant's sexual battery case. She said that she did not learn about the defendant's most recent threats until the day before trial.

John Vanover, a criminal investigator and special assistant for the District Attorney General in the Eighth Judicial District, testified that he was informed of the defendant's April 4 threats against the defendant's ex-wife. He said he did not tell Ms. England about the threats because she was afraid for her safety. He said he prepared the state's case against the defendant and presented it to the grand jury.

The defendant testified that he was forty-one years old and that he and his ex-wife divorced in 1993. He said that in 1992, he pled guilty to two counts of sexual battery and received a four-year prison sentence. He said that while he was in prison, he wrote about two hundred letters to his ex-wife and that the letters may have seemed threatening. He said that he wrote the letters because he just wanted to get back together with her and raise their two sons. He said that he tried to use fear to make his wife come back to him and that he realized what he did was wrong.

The defendant testified that after he wrote the letters, his ex-wife testified against him at his preliminary hearing. He said that the preliminary hearing was the only time she testified against him

and that after the hearing, he pled guilty and accepted a four-year community corrections sentence. He acknowledged telling his community corrections officer that he beat his wife for fifteen years and got away with it but got a four-year sentence for writing letters to her. He said that he was "just trying to make the point that I didn't think it was right that I had to get four years for some letters when I got away with what I had done for 15 years." He said that he had no intentions of killing his ex-wife and that he never told Bob Walden he was going to kill her. He said, "If I kill her, my kids will hate my guts. I can't kill my kids' . . . mother." He said that he had never made any threats to his ex-wife for her testifying against him in any proceeding.

On cross-examination, the defendant testified that if he had gone to trial instead of pleading guilty to writing the threatening letters, he would have been acquitted because in the letters, it is "very, very hard to tell that it's even a threat." He said that all of his prior convictions resulted from guilty pleas and that this was his first trial. He said that he did not consider a guilty plea to be the same as a conviction because neither party presents any proof. He said that although he pled guilty to previous crimes and said yes at the guilty plea hearings when the trial court asked him if he was guilty, he had to say yes in order "to make the case work out." He acknowledged having prior convictions for sexual battery, aggravated burglary, aggravated assault, and three counts of retaliation for past action. He denied that he threatened his ex-wife on April 4, 2001, or that she provided information against him in his sexual battery case. He said that the only time she testified against him was at his preliminary hearing for the three prior retaliation for past action charges. He said that his wife did not send him to prison and that he did not hold any ill will against her. He said that he wanted her to leave him alone and let him get on with his life. The jury convicted the defendant of retaliation for past action.

## I. INSUFFICIENCY OF THE EVIDENCE

The defendant claims that the evidence is insufficient to support his conviction. Specifically, he claims that the state "failed to prove that his threats to harm his ex-wife had any connection to her role as a 'witness at an official proceeding' as that phrase is used in the statute." See Tenn. Code Ann. § 39-16-510(a). He claims that he was resentful of the community corrections program because he once had been wrongly revoked from the program and unjustly imprisoned for over one year. He claims that he was merely "mouthing off" about the program to his community corrections officer. Finally, he contends that the evidence is insufficient because he did not make any threats against his ex-wife, and in any event, he did not make the threats directly to her. The state claims that the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d

542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Tennessee Code Annotated § 39-16-510(a) (Supp. 2002) provides as follows:

> A person commits the offense of retaliation for past action who harms or threatens to harm a witness at an official proceeding, judge, . . . juror or former juror by any unlawful act in retaliation for anything the witness, judge, . . . or juror did in an official capacity as witness, judge, . . . or juror.

Taken in the light most favorable to the state, the evidence shows that Vicky England notified the authorities about the defendant's repeatedly sending her threatening letters from prison, triggered his being charged with three counts of retaliation for past action, and testified against him at his preliminary hearing for those charges. As a result of his ex-wife's actions, the defendant pled guilty and was sentenced to four years in the community corrections program. The second time the defendant met with his program officer, he complained about being on community corrections, stated that he was in the program because he had written letters to his ex-wife, and told the officer that he was going to kill her. We believe that a rational jury could have found that the defendant was angry about his predicament, believed he was serving his community corrections sentence because his ex-wife had reported the threatening letters to the police and had testified against him at his preliminary hearing, and threatened to kill her in retaliation. Although the defendant testified that he did not threaten her, the jury chose to believe Bob Walden's testimony, and that is its prerogative. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Furthermore, we note that a defendant does not have to threaten a victim directly in order to commit retaliation for past action. See, e.g., State v. Lanier, 81 S.W.3d 776 (Tenn. Crim. App. 2000) (defendant convicted of retaliation for past action for telling deputy he was going to kill judge who had set his bond at $50,000). The evidence is sufficient.

## II. PRIOR CONVICTIONS FOR IMPEACHMENT

Next, the defendant claims that the trial court erred by allowing the state to impeach him with his prior convictions for retaliation for past action. He claims that because the crimes were the same as the offense in question, their probative value on his credibility was outweighed by their prejudicial effect and, therefore, inadmissible under Rule 609, Tenn. R. Evid. In addition, he claims that he did not open the door to impeachment. The state claims that the trial court properly ruled before trial that the defendant could not be impeached with the prior convictions but that the defendant opened the door to them during his direct and cross-examination testimony. We conclude that the trial court properly allowed the state to impeach the defendant.

Initially, the trial court ruled before trial that the defendant's three prior convictions could not be used to impeach him under Rule 609 because the convictions were the same as the crime in question, indicating that their probative value did not outweigh their unfair prejudicial effect. The

trial court stated, though, that the state could use the convictions if the defendant opened the door. Thus, our inquiry will focus on whether the trial court properly ruled that the defendant had opened the door to impeachment. We believe that it did.

"'Irrespective of admissibility under Rule 609 [of Tennessee Rules of Evidence], a conviction may be used to contradict a witness who "opens the door" and testifies on direct examination that he or she has never been convicted of a crime, or to counter some other facet of direct testimony.'" State v. Kendricks, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996) (quoting Neil P. Cohen et al., Tennessee Law of Evidence § 609.1 (3d ed. 1995)). During the defendant's direct testimony, the following exchange occurred:

> Q. Have you ever made any threats against Vicky because she was a witness or a potential witness against you in any proceeding?
>
> A. No. And if you get - - you know, it was like 200 letters. If you get every letter I wrote, I guarantee you there won't be one sentence in any of those letters that has anything with her being a witness against me, anywhere. I never, ever connected her with being a witness to me to do anything to her. And that's what this retaliation for past action is about. There's no connection to it - her being a witness to me doing anything to her in Court.

We believe that the defendant's stating on direct examination that he had never made any threats against his ex-wife for her being a witness against him opened the door to his three prior convictions for retaliation for past action. In any event, we believe the jury's hearing about his prior convictions was harmless error. During direct examination, Ms. England testified without objection that as a result of the defendant's letter writing, he was charged with retaliation for past action. The defendant later testified that he pled guilty in that case. Thus, the jury already knew that the defendant had at least one prior conviction in a case involving retaliation for past action against his ex-wife. We conclude that he is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE