[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1171 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1172 
The appellant, Brandon Lee Lansdell, was convicted of one count of making a terrorist threat, a violation of § 13A-10-15, Ala. Code 1975. Because Lansdell had two prior felony convictions, he was sentenced pursuant to § 13A-5-9, Ala. Code 1975, to 15 years' imprisonment.
The evidence tended to establish that James Allen Jones, Jr., and his family resided at 1408 Beach Street Southeast in Decatur. Lansdell resided next door at 1406 Beach Street Southeast — along with his mother and grandmother. During the early morning hours of October 7, 2003, a car belonging to one of Jones's daughters went up in flames while it was parked beneath the carport of Jones's house. Lansdell broke into the Jones house and woke the family, then went back outside and sat down on the front porch.
When police arrived, the car was "fully engulfed in flames." By the time the fire *Page 1173 
was brought under control, the carport, the aluminum siding on the house, and another vehicle were also burned. A tree in Lansdell's yard was also smoldering. Found at the scene was a distinctive gasoline can, similar to one owned by Lansdell.
Around 2:00 a.m. on January 3, 2004, Jones went to a side door of his house and saw Elliot Hadavi — the boyfriend of one of his daughters — at the back door to Lansdell's house. Lansdell had been seen running into his house at approximately the same time as they had discovered a stereo missing from Allison's car, and Hadavi wanted to question Lansdell about the incident. As Jones stood nearby, Lansdell came out of his house carrying some type of stick. In turn, Hadavi retrieved a small baseball bat from his car. Lansdell and Hadavi then got into a heated argument. As Jones attempted to restrain Hadavi, he heard Lansdell say, "I wish I would have burned your whole family up that night" or "I wish I would have burned all y'all up that night." Jones believed these words to be a threat to his family, and he notified the police. During the exchange, Jones told Lansdell, "I ought to put a bullet in your a-s-s." Jones then accused Lansdell of starting the fire that had occurred the previous October.
By the time the police arrived, Lansdell was back inside his house. According to Jones, Lansdell stood at the window to his house and called out that, "I'll just blow y'all's a-s-s up." A number of people heard Lansdell's comments, including Jones, his daughters, Hadavi, and the police officers dispatched to the scene. Decatur police officer Keith Hornbuckle heard Lansdell say, "Jimmy, I'm going to blow up your m ___ f ___ house and burn all you m ___ f ___" Lansdell was subsequently arrested and charged with first-degree arson, based on the October 2003 incident, and with making a terrorist threat, based on the January 2004 incident.
At trial, evidence concerning difficulties between Lansdell and the Jones family was presented. Jones testified that he believed that approximately five months before the October 2003 fire, Lansdell had stolen a stereo from one of the Joneses' cars. However, Jones was reluctant to press charges because he did not want any retaliation.
April Greene, a half-cousin of Lansdell, who once lived at the Beach Street house with Lansdell also testified. She stated that a few days before the October 2003 fire at the Jones house her car was burned, as well as Lansdell's. Greene identified the distinctive gas can found at the scene of the October 2003 fire at the Jones house as belonging to Lansdell.
Lansdell's grandmother, Loren Alexander, testified on her grandson's behalf. She stated that Lansdell had gone next door to save the Jones family. She further stated that during the January 2004 confrontation she never heard Lansdell threaten anyone.
After both sides rested, the trial court instructed the jury on the law applicable to Lansdell's case. The jury acquitted Lansdell of first-degree arson, but found him guilty of making a terrorist threat. This appeal followed.
 I.
Lansdell argues that the statute under which he was convicted, § 13A-10-15, Ala. Code 1975, is unconstitutional. Specifically, he argues that this statute is both overbroad and vague.
Section 13A-10-15 provides, in pertinent part:
 "(a) A person commits the crime of making a terrorist threat when he or she threatens by any means to commit *Page 1174 
any crime of violence or to damage any property by doing any of the following:
 "(1) Intentionally or recklessly:
 a. Terrorizing another person."
The validity of a statute may be challenged under two different doctrines: the overbreadth doctrine and the vagueness doctrine.City of Chicago v. Morales, 527 U.S. 41, 52,119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when `judged in relation to the statute's plainly legitimate sweep.'"Morales, 527 U.S. at 52, 119 S.Ct. 1849 (quotingBroadrick v. Oklahoma, 413 U.S. 601, 615,93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Moreover, "even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." Morales, 527 U.S. at 52,119 S.Ct. 1849 (citing Kolender v. Lawson, 461 U.S. 352,358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). The overbreadth doctrine protects the rights guaranteed by the First Amendment,see Morales, 527 U.S. at 52, 119 S.Ct. 1849; the vagueness doctrine seeks to protect the due-process rights guaranteed by the Fourteenth Amendment. see Lanzetta v. NewJersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888
(1939).
As evidenced above, the overbreadth doctrine applies to activities that are protected from prosecution by the First Amendment. As this Court has noted:
 "`"The overbreadth doctrine derives from the First Amendment, see Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and serves to invalidate legislation so sweeping that, along with its allowable proscriptions, it also restricts constitutionally-protected rights of free speech, press, or assembly, see e.g., Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971)."`"
Elston v. State, 687 So.2d 1239, 1244
(Ala. Crim.App. 1996) (quoting McCall v. State,565 So.2d 1163, 1165 (Ala.Crim.App. 1990)); accord Hyshaw v.State, 893 So.2d 1239, 1242 (Ala.Crim.App. 2003).
The overbreadth doctrine is to be used sparingly and only as a last resort. see Broadrick v. Oklahoma,413 U.S. at 613, 93 S.Ct. 2908. A challenge to a statute on the grounds of overbreadth is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [a]ct would be valid."United States v. Salerno, 481 U.S. 739, 745,107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The fact that a statute might, under the right set of circumstances, be unconstitutional "is insufficient to render it wholly invalid, since we have not recognized an `overbreadth' doctrine outside the limited context of the First Amendment." Salerno,481 U.S. at 745, 107 S.Ct. 2095.
Just as words that create an immediate panic — such as a false cry of "fire" in a crowded theater — are not entitled to constitutional protections, see Schenck v.United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470
(1919), Lansdell has no First Amendment right to threaten to commit a violent crime or to damage property and thus to terrorize the person to whom his threat is directed. As the United States Supreme Court has made clear, threats of violence enjoy no protections under the First Amendment. see R.A.V.v. City of St. Paul, Minn., 505 U.S. 377, 388,112 S.Ct. 2538, 120 L.Ed.2d 305 *Page 1175 
(1992); Virginia v. Black, 538 U.S. 343, 353,123 S.Ct. 1536, 155 L.Ed.2d 535 (2003).
Alabama courts have previously upheld the constitutionality of statutes prohibiting threatening acts, recognizing that threatening acts are unprotected by the First Amendment. "Whether the threat be against the life of a president, orto burn the house of an ordinary citizen, the protection of the First Amendment does not extend to such conduct."Works v. State, 57 Ala.App. 373, 375, 328 So.2d 624,625-26 (Ala.Crim.App. 1976) (emphasis supplied). Thus, Lansdell cannot threaten his neighbor with violence in order to intentionally or recklessly terrify his neighbor, and then successfully maintain that the State is prohibited from punishing his conduct based on the overbreadth doctrine. Because Lansdell's conduct is not constitutionally protected speech, his claim that § 13A-10-15 is overbroad must fail. See Hyshaw v. State, 893 So.2d at 1242.
Alternatively, Lansdell argues that § 13A-10-15 is unconstitutionally vague. As this Court noted in Vaughn v.State, 880 So.2d 1178 (Ala.Crim.App. 2003):
 "`"The doctrine of vagueness . . . originates in the due process clause of the Fourteenth Amendment, see Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and is the basis for striking down legislation which contains insufficient warning of what conduct is unlawful, See United States v. National Dairy Products Corporation, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
 "`"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989, 996
(1954). A vague statute does not give adequate `notice of the required conduct to one who would avoid its penalties,' Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, 371 (195[2]), is not `sufficiently focused to forewarn of both its reach and coverage,' United States v. National Dairy Products Corporation, 372 U.S. at 33, 83 S.Ct. at 598, 9 L.Ed.2d at 566, and `may trap the innocent by not providing fair warning,' Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227-28 (1972).
 "`"As the United States Supreme Court observed in Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948):
 "`"`There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act, or in regard to the applicable tests to ascertain guilt.'
 "`"333 U.S. at 515-16, 68 S.Ct. at 670, 92 [L.Ed. at] 849-50 [citations omitted]."
 "`McCrary v. State, 429 So.2d 1121, 1123-24
(Ala.Cr.App. 1982), cert. denied 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983).'
"McCall v. State, 565 So.2d 1163, 1165
(Ala.Crim.App. 1990).
 "`"`As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' Kolender *Page 1176 v. Lawson, 461 U.S. 352 [357], 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). A statute challenged for vagueness must therefore be scrutinized to determine whether it provides both fair notice to the public that certain conduct is proscribed and minimal guidelines to aid officials in the enforcement of that proscription. See Kolender, supra; Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)."`
 "Timmons v. City of Montgomery, 641 So.2d 1263, 1264 (Ala.Crim.App. 1993), quoting McCorkle v. State, 446 So.2d 684, 685
(Ala.Crim.App. 1983). . . .
 ". . . . The judicial power to declare a statute void for vagueness `should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended.' Jansen v. State ex rel. Downing, 273 Ala. 166, 170, 137 So.2d 47, 50 (1962)."
880 So.2d at 1194-96; see also O'Callaghan v. State,945 So.2d 467, 474-75 (Ala.Crim.App. 2006).
The mere fact that a statute contains a term that is not specifically defined by the statute or as part of the statutory scheme does not automatically render the statute void for vagueness. See, e.g., Scott v. State, 917 So.2d 159
(Ala.Crim.App. 2005); State v. Randall, 669 So.2d 223,226 (Ala.Crim.App. 1995); Musgrove v. State,519 So.2d 565, 582-83 (Ala.Crim.App.), aff'd, 519 So.2d 586 (Ala. 1986).
Lansdell contends that § 13A-10-15 fails to pass constitutional muster because certain terms contained therein — such as "by any means," "crime of violence," and "terrorizing" — "defy definition." After carefully reviewing § 13A-10-15, we conclude that it is not unconstitutionally vague so as to violate Lansdell's due-process rights. Moreover, these terms — in their common usage — is one that could be understood by the average person. For example, "by any means" signifies that there is no limitations on the means by which a person may threaten another — in person, by written communication, over the telephone, or by some other means of electronic communication, such as e-mail or text-messaging — and be found in violation of § 13A-10-15. We note that this term is contained in a number of Alabama statutes and, to date, no statute has been invalidated on the ground that this term was vague.
Similarly, the term "crime of violence," means nothing more than a violent crime. We further note that this term is defined elsewhere in the Alabama Code, see §§ 12-25-32 and13A-11-70, Ala. Code 1975. Certainly, threatening to "burn up" the Jones house could be considered a threat of arson, specifically identified as a violent crime. See § 12-25-32(13)(a)(1), Ala. Code 1975. Thus, the failure to define "crime of violence" does not render § 13A-10-15 void for vagueness.
As for the term "terrorizing," this Court has addressed in some detail the meaning of this term when reviewing a vagueness challenge to § 13A-6-43 — the statute defining the offense of kidnapping. In Musgrove v. State,519 So.2d 565 (Ala.Crim.App.), aff'd, 519 So.2d 586 (Ala. 1986), this Court rejected a vagueness challenge to our first-degree-kidnapping statute, despite the fact that the statute did not define the term "terrorism." We noted that in construing criminal statutes words must be given their ordinary, commonly understood meaning, concluding that the statute provided fair warning of its prohibited *Page 1177 
conduct. 519 So.2d at 582-83. As we noted inMusgrove:
 "`Webster's New Collegiate Dictionary defines "terror" as "to fill with intense fear or to coerce by threat or force." . . . No magic words nor incantations on part of the witness is necessary to establish "terror."' Rogers v. State, 687 S.W.2d 337, 341-42 (Tex.Cr.App. 1985) (defining `terror' as an element of aggravated kidnapping). `Webster's Third New International Dictionary (1981) casts some light upon the meaning of "terrorize:" It may mean to fill with terror or anxiety; or to coerce by threat or violence. Perhaps, to excite fear; or to rule by intimidation, p. 2361. Terrorism may be the systematic use of terror as a means of coercion. It may create an atmosphere of threat or violence, p. 2361. Terror may denote stark fear; a state of intense fright or apprehension, p. 2361. Terrorize, as distinct from terrify, often implies an intentional affecting with terror, p. 912 (frighten). See also, Arto v. State, 19 Tex.App. 126, 136 (1886), stating that terror means more than fright or alarm.' Padgett v. State, 683 S.W.2d 453, 457 (Tex.App. 4 Dist. 1983). `Terrorize means to cause extreme fear by use of violence or threats.' State v. Schweppe, 306 Minn. 395, 237 N.W.2d 609, 614
(1975). `Terrorize is not defined therein [by statute], so it must be measured by what men of common intelligence would consider it to mean. . . . The word "terrorize" means to reduce to terror by violence or threats, and terror means an extreme fear or fear that agitates body and mind. Given limiting definitions for the words "threat" and "terrorize," as those terms are understood by men of common intelligence, [the statute] proscribing terroristic threats survives any constitutional challenge for vagueness and uncertainty. . . .' State v. Gunzelman, 210 Kan. 481, 502 P.2d 705, 709-10 (1972). Terrorize `means to reduce to terror by violence or threats, and terror means an extreme fear or fear that agitates body and mind.' Armstrong v. Ellington, 312 F.Supp. 1119, 1126 (W.D.Tenn. 1970), holding that the provision of a statute prohibiting walking or traveling for purposes of `terrorizing' any citizen was not unconstitutionally vague or uncertain."
519 So.2d at 583.
Here, the trial court, when instructing Lansdell's jury on the definition of "terrorize," used a definition consistent with the definition provided by this Court in Musgrove; that is, "[t]o terrorize another person is to alarm that person, to frighten that person, to put into them a sense of dread." (R. 434.) We conclude, therefore, that § 13A-10-15
is not unconstitutionally vague, despite the fact that the statute itself does not specifically define the afore-mentioned terms.
Finally, we note that Alabama is not alone in criminalizing conduct by which an individual terrorizes others by threatening violence or damage to property. Indeed, numerous other states have criminalized such conduct. Moreover, those statutes have withstood constitutional challenges based on overbreadth and vagueness. See Allen v. State, 759 P.2d 541, 545
(Alaska Ct.App. 1988); In re Ryan A., 202 Ariz. 19,39 P.3d 543 (Ariz.Ct.App. 2002); People v. Model,113 Cal.App.4th 679, 685, 6 Cal. Rptr.3d 628, 634 (2003); Statev. Crudup, 81 Conn.App. 248, 263, 838 A.2d 1053, 1064
(2004); Saidi v. State, 845 So.2d 1022, 1026
(Fla.Dist.Ct.App. 2003); Reilly v. State,847 F.Supp. 951, 958 (M.D.Fla. 1994); Lanthrip v. State,235 Ga. 10, 218 S.E.2d 771 (1975); Masson v. Slaton,320 F.Supp. 669, 672-73 (N.D.Ga. 1970); State v. Chung,75 Haw. 398, 862 P.2d 1063 (1993); Thomas v.Commonwealth, 574 S.W.2d 903, 909 *Page 1178 
(Ky. Ct.App. 1978); Sykes v. State, 578 N.W.2d 807
(Minn.Ct.App. 1998); State v. Schmailzl, 243 Neb. 734,740-41, 502 N.W.2d 463, 467-68 (1993); Commonwealth v.Bunting, 284 Pa.Super. 444, 455, 426 A.2d 130, 136 (1981);State v. Lanier, 81 S.W.3d 776 (Tenn.Crim.App. 2000).
Accordingly, for the aforementioned reasons, Lansdell's challenge to the constitutionality of § 13A-10-15 must fail.
 II.
Lansdell next argues that the State failed to prove a prima facie case of making a terrorist threat. Specifically, he argues that the State failed to prove that he intentionally or recklessly terrorized James Allen Jones, Jr., or that Jones was terrorized by his threat.
 "`"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."' Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quoting Faircloth v. State, 471 So.2d 485, 488
(Ala.Crim. App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). `"The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."' Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting O'Neal v. State, 602 So.2d 462, 464
(Ala.Crim.App. 1992). `"When there is legal evidence from which the jury could, by fair inference find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this Court will not disturb the trial court's decision."` Farrior v. State, 728 So.2d 691, 696
(Ala.Crim.App. 1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App. 1990). `The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978).
 "`The trial court's denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which' the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App. 1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App. 1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App. 1983)."`
Gavin v. State, 891 So.2d 907, 974
(Ala. Crim.App. 2003), cert. denied, 891 So.2d 998 (Ala. 2004) (quotingWard v. State, 610 So.2d 1190, 1191
(Ala.Crim.App. 1992)). See also Ward v. State,814 So.2d 899, 908-10 (Ala.Crim.App. 2000), cert. denied,814 So.2d 925 (Ala. 2001).
Thus, the State was required to prove that Lansdell acted intentionally or recklessly to terrorize Jones by threatening to "blow up" Jones's house, and that Jones was, in fact, frightened by Lansdell's threat. See § 13A-10-15(a)(1)a., Ala. Code 1975.
As this Court has stated: *Page 1179 
 "[B]ecause intent is a state of mind, it is rarely susceptible of direct or positive proof. Instead, the element of intent must usually be inferred from the facts testified to by the witnesses together with the circumstances as developed by the evidence. Seaton v. State, 645 So.2d 341, 343 (Ala.Crim.App. 1994) (quoting McCord v. State, 501 So.2d 520, 528-29 (Ala.Crim.App. 1986)). Intent' "`may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances.'"' Farrior v. State, 728 So.2d 691, 695
(Ala. Crim.App. 1998) (quoting Jones v. State, 591 So.2d 569, 574 (Ala.Crim.App. 1991), quoting, in turn, Johnson v. State, 390 So.2d 1160, 1167
(Ala.Crim.App. 1980)). Finally, `"[t]he intent of a defendant at the time of the offense is a jury question."' C.G. v. State, 841 So.2d 281, 291
(Ala.Crim.App. 2001), aff'd, 841 So.2d 292 (Ala. 2002), quoting Downing v. State, 620 So.2d 983, 985
(Ala.Crim.App. 1993)."
Pilley v. State, 930 So.2d 550, 564-65
(Ala. Crim.App. 2005).
At the time Lansdell made the threat to "blow up" the Jones house, he was aware that Jones believed Lansdell was responsible for the October 2003 fire resulting in damage to his house and two automobiles. Further, Lansdell had already stated that he wished he had burned up the Jones family that night. Given these circumstances, the jury could reasonably have inferred that Lansdell had made the threat with the intent to cause fear in Jones and his family.
Likewise, the jury could have concluded that, given the circumstances surrounding this incident, Lansdell's words caused Jones to fear for his safety as well as that of his family. "`[T]he law will presume fear'" if there is "`just ground for it.'" Glover v. State, 393 So.2d 510, 512
(Ala.Crim.App. 1981) (quoting 6 Am.Jur.2d Robbery
§ 22) (discussing fear in the context of robbery). Here, Jones believed that Lansdell had caused the October 2003 fire at his home. He also believed that Lansdell had stolen a stereo from one of the Joneses' family cars several months earlier, but he did not want to press charges for fear of retaliation.
Given these circumstances, the trial court did not err in submitting the question of Lansdell's guilt to the jury.
 III.
Lansdell also argues that the trial court's jury instructions were flawed for two reasons. First, he argues that the trial court erred because the court failed to properly define several of the terms contained in § 13A-10-15. Second, he argues that the trial court erred when it refused to instruct the jury on the offenses of harassment, disorderly conduct, and menacing as lesser-included offenses of making a terrorist threat.
When reviewing a trial court's jury instructions, this Court keeps in mind the following principles:
 "A trial court has broad discretion when formulating its jury instructions. See Williams v. State, 611 So.2d 1119, 1123 (Ala.Cr.App. 1992). When reviewing a trial court's instructions, `"the court's charge must be taken as a whole, and the portions challenged are not to be isolated therefrom or taken out of context, but rather considered together."' Self v. State, 620 So.2d 110, 113 (Ala.Cr.App. 1992) (quoting Porter v. State, 520 So.2d 235, 237
(Ala.Cr.App. 1987)); see also Beard v. State, 612 So.2d 1335 (Ala.Cr.App. 1992); Alexander v. State, 601 So.2d 1130 (Ala.Cr.App. 1992)." *Page 1180 
Williams v. State, 795 So.2d 753, 780
(Ala. Crim.App. 1999), aff'd, 795 So.2d 785 (Ala. 2001).
Lansdell claims that the trial court erred because it failed to properly define several of the terms contained in the offense of making a terrorist threat; namely, "any means," "any crime of violence," "damage to property," and "terrorizing." Initially, we note that, with regard to the terms "any means," "any crime of violence," and "damage to property," Lansdell failed to raise this argument during the trial court's charge conference, failed to include in his proposed jury instruction the definitions for those terms, and failed to object to the trial court's instructions on these grounds. Thus, nothing is preserved for our review. See Rule 21.3, Ala.R.Crim.P. Although Lansdell did present the trial court with a proposed definition for "terrorizing," the definition presented at trial differs from the one argued to this court on appeal. Therefore, this claim is likewise not preserved for our review. SeeJolly v. State, 858 So.2d 305, 309
(Ala.Crim.App. 2002) (recognizing the general principle that a "statement of specific grounds of objection to a jury instruction at trial waives all other grounds").
Even if this claim had been preserved for review, a reversal of Lansdell's conviction is not warranted. "When a term is included in a statute relevant to a case, and that term is not defined by statute, whether it is necessary for the trial court to define the term for the jury hinges on the facts of the case." Ivery v. State, 686 So.2d 495, 501-02
(Ala.Crim.App.), aff'd on return to remand, 686 So.2d 520
(Ala.Crim.App. 1996). As used in this case, the terms "any means," "any crime of violence," and "damage to property" are terms that could be "understood by the average juror in their common usage." Thornton v. State, 570 So.2d 762, 772
(Ala.Crim.App. 1990). Moreover, Lansdell has failed to show how a definition of these terms could have clarified their meaning to the jury, or that the lack of such definitions contributed to confusion among the jurors as to the meaning of these terms. We note that the only term that might have needed to be defined for the jury was "terrorizing." However, we note that the trial court's instructions did, in fact, define the term "terrorize" for the jury. Thus, because this term was properly defined for the jury, no error occurred. See Ward v. State,610 So.2d 1190, 1194 (Ala.Crim.App. 1992).
Lansdell also argues that the trial court erred in refusing to instruct the jury on the offenses of harassment, disorderly conduct, and menacing as lesser-included offenses of making a terrorist threat.
Whether one offense is a lesser-included offense of another is governed by § 13A-1-9(a), Ala. Code 1975, which provides:
"An offense is an included one if:
 "(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
 "(2) It consists of an attempt or solicitation to commit the offense charged or to commit a lesser included offense; or
 "(3) It is specifically designated by statute as a lesser degree of the offense charged; or
 "(4) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission."
A defendant is entitled to a charge on a lesser-included offense only if there is any reasonable theory from the evidence *Page 1181 
to support the charge. Ex parte Smith,756 So.2d 957, 963 (Ala. 2000). As this Court stated in Chambers v.City of Opelika, 698 So.2d 792 (Ala.Crim.App. 1996);
 "`Where all the elements of an offense separate from the offense charged are present in or are included among elements of [the] charged offense, such separate offense is a lesser included offense for which [the] defendant may be convicted, though acquitted of the offense charged. To be necessarily included in the greater offense, the lesser must be such that it
is impossible to commit the greater without first having committed the lesser.'"
698 So.2d at 794 (quoting Sharpe v. State,340 So.2d 885, 887 (Ala.Crim.App. 1976) (emphasis added inChambers)).
Here, Lansdell was charged with violating § 13A-10-15(a)(1)a. Thus, the State was required to prove that Lansdell intentionally or recklessly terrorized another person by threatening another person by threatening to commit any crime or violence or to damage any property.
With these general principles of law in mind, we must now determine whether each of the aforementioned misdemeanor offenses constitutes a lesser-included offense to the offense of making a terrorist threat.
Harassment occurs when a person, "with intent to harass, annoy, or alarm another person":
 "a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.
 "b. Directs abusive or obscene language or makes an obscene gesture towards another person."
§ 13A-11-8(a)(1), Ala. Code 1975. Section 13A-11-8(a)(2) adds: "For purposes of this section, harassment shall include a threat, verbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety."
Thus, to be guilty of harassment in the context of making a threat, an individual must threaten another person and intend to carry out that threat. By contrast, no proof that the individual intends to carry out the threat is required for proof of the offense of making a terrorist threat. Likewise, "abusive or obscene language" is not required in order to establish proof of making a terrorist threat. Accordingly, harassment is not a lesser-included offense of the offense of making a terrorist threat. See Cockrell v. State,890 So.2d 168, 170 (Ala.Crim.App. 2003). Therefore, the trial court correctly refused Lansdell's requested charge.
Disorderly conduct is established when a person, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
 "(1) Engages in fighting or in violent tumultuous or threatening behavior; or
 "(2) Makes unreasonable noise; or "(3) In a public place uses abusive or obscene language or makes an obscene gesture; or
 "(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
 "(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
 "(6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse."
§ 13A-11-7(a), Ala. Code 1975.
Again, to be guilty of disorderly conduct, a person must intend to cause public inconvenience, annoyance, or alarm or to recklessly create a risk of such. No such proof of a public inconvenience, annoyance, or *Page 1182 
alarm is required to establish the offense of making a terrorist threat. Thus, disorderly conduct is not a lesser-included offense of the offense of making a terrorist threat.
Menacing occurs when a person, "by physical action," "intentionally places or attempts to place another person in fear of imminent serious physical injury." § 13A-6-23(a), Ala. Code 1975.
Thus, some physical action is required to establish menacing. However, one may commit the offense of making a terrorist threat without any physical action. Here, it was Lansdell's oral threat — accompanied by no physical action — that led to the charges against him. "Language, whether abusive or obscene, is not `physical action.'" Ex parte N.W.,748 So.2d 190, 193 (Ala. 1999). Accordingly, menacing is not a lesser-included offense of the offense of making a terrorist threat. Therefore, based on the facts of this case, the trial court properly refused Lansdell's requested charge on menacing.
 IV.
As part of his claims of error concerning the trial court's jury instructions, Lansdell appears to challenge the sufficiency of his indictment and/or the court's instruction regarding that indictment. Specifically, Lansdell claims that although the indictment returned against him charged him with threatening Jones "with intent to terrorize another person," the court instructed the jury that it could find Lansdell guilty if it concluded that he did so "either intentionally or recklessly." Accordingly, Lansdell claims, the indictment was "void" because it "failed, to charge the requested mental states."
Because this claim is nonjurisdictional, see Ex parteSeymour, 946 So.2d 536 (Ala. 2006), it must be preserved for appellate review. Our examination of the record, however, indicates that Lansdell did not move for a more definite statement of his charge, pursuant to Rule 13.2(e), Ala. R.Crim.P. Likewise, he did not object to the trial court's instructions on this ground. Given these circumstances, Lansdell cannot now claim error. Indeed, both this Court and the Alabama Supreme Court have previously rejected similar claims. See, e.g., Sullens v. State, 878 So.2d 1216,1220-1228 (Ala.Crim.App. 2003) (defendants charged with discharging firearm into occupied vehicle not entitled to relief on claim that indictments were defective for failing to allege a culpable mental state because they did not request a more definite statement of the charges and because imperfections in the indictments did not tend to prejudice their substantial rights); Ash v. State,843 So.2d 213, 217 (Ala. 2002) (court's jury instruction did not materially change indictment by charging that defendant could be found guilty of robbery of either of two victims or both victims, and the indictment charged only that the defendant robbed both victims).
Moreover, we note that the record indicates that Lansdell requested the trial court to instruct the jury that a person commits the crime of making a terrorist threat when he "intentionally or recklessly terrorizes another person," and the trial court complied with that request. This Court has long held that "[a] party cannot assume inconsistent positions in the trial and appellate courts and, as a general rule, will not be permitted to allege an error in the trial court proceedings which was invited by him or was a natural consequence of his own actions." Leverett v. State, 462 So.2d 972, 976-77
(Ala.Crim.App. 1984). Accord Moody v. State,888 So.2d 532, 561 (Ala.Crim.App. 2003); Burgess v. State,811 So.2d 557, 596 (Ala.Crim.App. 1998); Melson v. State,775 So.2d 857, 874 (Ala.Crim.App. 1999); Campbell v.State, *Page 1183 570 So.2d 1276, 1282 (Ala.Crim.App. 1990). Accordingly, no basis for reversal exists as to this claim.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN and WELCH, JJ., concur. BASCHAB, P.J., and SHAW, J., concur in the result.