824 So.2d 844 (2001)
Ex parte Carey Dale GRAYSON.
(Re Carey Dale Grayson v. State).
1991310.
Supreme Court of Alabama.
May 11, 2001.
Opinion on Denial of Rehearing January 18, 2002.
Virginia A. Vinson of Wilkinson & Vinson, Birmingham, for petitioner.
Bill Pryor, atty. gen., and Michael B. Billingsley, asst. atty. gen., for respondent.
BROWN, Justice.
Carey Dale Grayson was indicted on two counts of capital murder. Count I of the indictment charged Grayson with the murder of Vickie Deblieux during a kidnapping in the first degree. § 13A-5-40(a)(1), Ala. Code 1975. Count II of the indictment charged Grayson with the murder of Vickie Deblieux during a robbery in the first degree. § 13A-5-40(a)(2), Ala.Code 1975. A jury found Grayson guilty of capital murder as charged in Count I of the indictment, and, as to Count II, guilty of the lesser included offense of intentional murder. The trial court entered a judgment of conviction on each verdict.
With regard to Grayson's conviction for capital murder, the jury, by a vote of 12-0, recommended the death penalty. The trial court accepted the jury's recommendation and sentenced Grayson to death by electrocution. The trial court sentenced Grayson to life in prison for his conviction of intentional murder.
On November 19, 1999, the Court of Criminal Appeals affirmed Grayson's conviction for capital murder and his sentence of death. Grayson v. State, 824 So.2d 804 (Ala.Crim.App.1999). On double-jeopardy grounds, the Court of Criminal Appeals ordered the trial court to vacate Grayson's conviction for intentional murder, as a lesser offense included in the capital murder charged in Count II of the indictment. *845 The Court of Criminal Appeals subsequently overruled Grayson's application for rehearing, without opinion.
This Court, on April 11, 2000, granted Grayson's petition for a writ of certiorari to review the opinion of the Court of Criminal Appeals and to search the record for plain error, pursuant to Rule 39(k), Ala. R.App.P.[1]
For a recitation of the facts, see Grayson v. State, 824 So.2d at 809-10.
In his certiorari petition to this Court, Grayson raises 11 issues, all of which he also raised in the Court of Criminal Appeals. That court thoroughly addressed and properly decided each of those issues. In addition to considering all of the issues raised, this Court has searched the record for reversible error; we have found none, plain or otherwise. We conclude that Grayson received a fair trial.
After reviewing the record and the opinion of the Court of Criminal Appeals, and after independently considering the propriety of the death sentence, we find and hold that the judgment of the Court of Criminal Appeals affirming Grayson's conviction and his sentence of death is due to be affirmed.
AFFIRMED.
MOORE, C.J.,[*] and HOUSTON, SEE, LYONS, WOODALL, and STUART, JJ., concur.
JOHNSTONE and HARWOOD,[*] JJ., concur in part; concur in the result in part; and concur in the judgment.
JOHNSTONE, Justice (concurring in part, concurring in the result in part, and concurring in the judgment).
With two exceptions, I concur. While the main opinion approves the treatment of all issues by the Court of Criminal Appeals, I concur only in the result of the treatment of two of the issues. I will discuss those two issues.
On appeal, Grayson argued that the trial court committed reversible error in limiting his cross-examination of "the victim's mother [who] had testified during the State's case-in-chief to establish that the victim was her daughter, and had also testified that, just before the offense, the victim had telephoned her, stating that she would be traveling home to Louisiana very shortly, by bus or by plane." Grayson v. State, 824 So.2d 804, 811 (Ala.Crim.App. 1999). According to the Court of Criminal Appeals, "Jan Deblieux's testimony identifying her daughter was clearly relevant, and her testimony concerning her telephone conversation with her daughter was also relevant because it helped to determine the timing of the victim's death, to explain the location of the crime, and to indicate that the victim did not willingly accept a ride going in a direction different from her destinationLouisiana." 824 So.2d at 812. One of the make-weight reasons offered by the Court of Criminal Appeals to justify the ruling of the trial *846 court limiting the cross-examination of this witness is that "[t]he subject matter of this testimony is not the sort that bias, even if present, would affect." 824 So.2d at 815. (Emphasis added.) Because the substance of the testimony was not subject to independent verification, the testimony was manifestly the sort that bias could affect. The witness had the power to ascribe to her daughter any statements the witness wanted to ascribe to her daughter. The witness could ascribe words that would better suit the needs of the prosecutor or words that precisely matched the witness's recollection, depending on the witness's veracity and inclination. This Court should not approve the rationale that "the subject matter of this testimony is not the sort that bias, even if present, would affect." I agree with the Court of Criminal Appeals, however, that the particular impeachment offered by the defendanttestimony about a wrongful death suit filed by the victim's ex-boyfriendwas appropriately allowed but limited by the trial court. In other words, I agree that the trial court properly exercised its discretion in allowing the impeachment to the extent that it was probative on the issue of bias and in limiting the impeachment to the extent that it would be irrelevant or not probative.
During the penalty phase of the trial, the defendant called Dr. Goff, a psychologist, to testify to the defendant's mental frailties in mitigation of the defendant's crime. On cross-examination, and over the defendant's objections, the trial court allowed the prosecutor to question Dr. Goff about out-of-court statements made by the defendant's codefendants. The trial court allowed the prosecutor to ask Dr. Goff about a codefendant's statement that the defendant Grayson "had said prior to the time they went and found this girl that he wanted to go find somebody to kill." (R. 963.) The trial court allowed the prosecutor to ask Dr. Goff about a codefendant's statement to the effect that, when the defendant Grayson said "he wanted to kill somebody, Trace Duncan, another codefendant, said he would freak out if he did and Grayson told him, if you do freak out, I'll kill you too." (R. 965.) The trial court allowed the prosecutor to introduce Dr. Goff's testimony to the effect that codefendants Duncan and Mangione had said in their statements that Grayson was "the leader of the pack and propos[ed] the plan to kill somebody." (R. 972-73.)
In analyzing the admissibility of the codefendants' statements so introduced, the Court of Criminal Appeals recites that, "[w]hile the expert [Dr. Goff] testified that he had reviewed the appellant's as well as the codefendants' statements, he testified that he had based his diagnosis on information obtained from the appellant's statements and that he had not considered the codefendants' statements in arriving at a diagnosis." 824 So.2d at 837. (Emphasis added.) Had Dr. Goff, in fact, not based his opinions and his diagnosis on the codefendants' statements, then the analysis by the Court of Criminal Appeals would be incorrect, for the introduction of the codefendants' statements would not have constituted proper inquiry into, or impeachment of, the basis of Dr. Goff's opinions and diagnosis. The transcript, however, reveals that Dr. Goff finally admitted that he had, to some extent, considered the codefendants' statements. (R. 973.) This admission by Dr. Goff, not recognized by the Court of Criminal Appeals, is essential to the legality of the introduction of the codefendants' statements. The analysis by the Court of Criminal Appeals is inappropriate to the facts recited in the opinion to predicate the analysis. Accordingly, I concur only in the result on this issuethe conclusion that the trial court did not err in allowing this cross-examination.
HARWOOD, J., concurs.

*847 On Application for Rehearing

BROWN, Justice.
On application for rehearing, Carey Dale Grayson argues, for the first time, that the trial court erred to reversal by selecting alternate jurors at random at the conclusion of the trial, in violation of Rule 18.4(g), Ala. R.Crim. P.
The record reflects that after voir dire examination of the prospective jurors had been completed and the challenges for cause had been exercised, 42 persons remained on the venire list. Each party was then allowed 14 peremptory challenges. After the peremptory challenges were exercised, 14 veniremembers remained. The trial court then empaneled the 14 remaining veniremembers as the trial jury, without designating which of the 14 were the alternate jurors. At the close of the trial, just before the jurors retired to deliberate, the trial court, by a random draw, and without objection from either party, selected 2 of the 14 jurors to be designated as "alternates." The trial court then discharged the two alternate jurors who had been randomly selected; the alternates did not participate in the jury's deliberations.
Grayson correctly points out that the trial court's procedure for selecting the alternate jurors was inconsistent with the procedure provided in Rule 18.4(g), Ala. R.Crim. P. That rule provides, in pertinent part:
"(g) Alternate jurors.

"(1) Number and qualifications. The court may in its discretion qualify such alternate jurors as it deems necessary, except that in capital cases the court shall qualify at least two (2) alternate jurors, as required by law. Alternate jurors shall be drawn from the venire in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the principal jurors, except that they shall not deliberate with the jury or vote upon the verdict unless designated to replace a principal juror. An alternate juror who does not replace a principal juror shall be discharged at the time the jury retires to consider its verdict.

". . . .
"(3) Procedure for selecting. When alternate jurors are being used, the parties shall strike from the list, according to the procedure provided in subsection (f)(1), until there remain twelve (12) names on the list. The last person or persons struck shall be the alternate or alternates, and if it becomes necessary for an alternate to replace a principal juror, then the last person struck shall be designated. The identity of alternate jurors shall not be divulged to the jurors until the jury retires for deliberation."
(Emphasis added.)
Grayson argues that by failing to follow the procedure set out in Rule 18.4(g), and by instead randomly selecting the 2 alternate jurors from the 14 jurors who heard the evidence, the trial court impaired his "right to free and thoughtful exercise of his peremptory strikes." We review this claim under a plain-error standard because this matter was not objected to at trial and because the petition for certiorari review was filed in this Court before the effective date of the amendment to Rule 39, Ala. R.App. P. See Ex parte Grayson, 824 So.2d 844, 845 n. 1 (Ala.2001); Ex parte Powell, 796 So.2d 434 (Ala.2001); Ex parte Myers, 699 So.2d 1285, 1296 (Ala.), cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998). "Error is plain `if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.' Haney *848 v. State, 603 So.2d 368, 392 (Ala.Crim. App.1991), aff'd, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993)." Ex parte Powell, 796 So.2d at 436.
Grayson offers nothing to indicate that his rights were injuriously affected by the trial court's departure from Rule 18.4(g). He does not suggest how the jury that heard the case was anything other than impartial. He was allowed to exercise 14 peremptory challenges against a list of 42 qualified prospective jurors. He was aware that every prospective juror against whom he did not exercise a strike (and who was not struck by the State) would remain among the 14 veniremembers empaneled as the trial jury and was therefore quite likely to serve on the 12 person jury that ultimately deliberated. Moreover, the trial court's departure from Rule 18.4(g) did not impose on Grayson any theoretical disadvantage in the jury-selection process that was not also imposed on the State.
Grayson fails to demonstrate that the fairness or integrity of the judicial proceedings was seriously affected by the error. Ex parte Powell, 796 So.2d at 436. Therefore, we hold that the trial court's error does not rise to the level of plain error.
APPLICATION OVERRULED.
MOORE, C.J., and HOUSTON, SEE, LYONS, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
NOTES
[1] Rule 39, Ala.R.App.P., was amended, effective May 19, 2000.

"The amendment removes the provision in the former Rule 39(c) that provided that a petition for a writ of certiorari to the Supreme Court in a case in which the death penalty was imposed would be granted as a matter of right. With this amendment, review of death-penalty cases will be at the discretion of the Supreme Court. The Supreme Court retains the authority to notice any plain error or defect in the proceedings under review in those cases."
Court Comment to Amendment to Rule 39, Ala.R.App.P., effective May 19, 2000, as to death-penalty cases.
[*] Although Chief Justice Moore and Justice Harwood were not members of this Court when this case was orally argued, they have listened to the tape of oral argument.