After having been indicted for the attempted intentional murder of Jerome Fails, Christopher Cockrell was convicted on June 6, 2002. See §§ 13A-6-2(a)(1) and 13A-4-2, Ala. Code 1975. The trial court sentenced Cockrell, as a habitual offender, to life in prison. § 13A-5-9(b)(3), Ala. Code 1975. This appeal followed.
The facts adduced at trial indicate the following: On October 1, 2001, following a previous disagreement over the theft of some money from Carlos Ivey's car, Cockrell was seen hiding in some bushes next to the neighborhood grocery store. Ivey pulled up in his car to a stop sign close to the store. Cockrell, following Ivey's car, ran from the bushes and down the street. Cockrell fired several shots into Ivey's car. One of the shots struck 12-year-old Jerome Fails, who was standing on his grandmother's front porch eating a sucker, in the head. Although Jerome survived, he suffered severe brain damage and was unable to move or talk.
Cockrell testified that Ivey fired at him first, that he fired at Ivey in self-defense, and that the did not intend to shoot Jerome Fails.
For the reasons stated in Part II of the opinion, we remand this cause for the trial court to enter a judgment on the lesser-included offense of first-degree assault with a deadly weapon, see § 13A-6-20(a)(1), Ala. Code 1975. We also discuss in Part I the merits of Cockrell's argument that he was entitled to a charge on a lesser-included offense, because, if this argument had been meritorious, a new trial would have been warranted, seegenerally Ex parte Walls, 711 So.2d 490 (Ala. 1997), rather than simply remanding for the trial court to enter a judgment on the correct *Page 170 
charge, see generally Ex parte Fletcher, 718 So.2d 1132 (Ala. 1998).
 I. Jury Charges on Lesser-Included Offense
Cockrell argues on appeal, as he did at the charge conference at trial, that the trial court should have charged the jury on the lesser-included offense of reckless endangerment.
 "`A defendant is entitled to a charge on a lesser-included offense if there is any reasonable theory from the evidence that would support [his theory of the case].' Ex parte Oliver, 518 So.2d 705, 706 (Ala. 1987); § 13A-1-9(b), Ala. Code 1975. To state that rule differently, a charge on a lesser-included offense is not required if there is no `reasonable theory from the evidence that would support' giving that instruction."
Ex parte Smith, 756 So.2d 957, 963 (Ala. 2000). However, "[i]t is a well accepted principle of law that a claim of self-defense necessarily serves as an admission that one's conduct was intentional. Harper v. State, 534 So.2d 1137 (Ala.Cr.App. 1988). In other words, a person simply cannot negligently or recklessly defend himself." Lacy v. State, 629 So.2d 688, 689
(Ala.Crim.App. 1993). As stated above, Cockrell asserted the affirmative defense of self-defense at trial. By pleading self-defense, Cockrell admitted that his conducted was intentional, and he foreclosed any possibility that his conduct was reckless. Therefore, the trial court properly denied his request for a jury charge on the lesser offense of reckless endangerment.
 II. Sufficiency of the Evidence
At trial, Cockrell moved for a judgment of acquittal at the end of the State's case-in-chief, arguing that the theory of transferred intent presented by the State was insufficient evidence of the specific intent required to prove attempted murder.[1] Cockrell renewed his argument at the close of all the evidence.
Although we have mentioned this concept in the area of the charge of assault with intent to murder, which was superseded by our current Code and which is substantially the same charge as the current Code's charge of attempted murder, see Free v.State, 455 So.2d 137, 147 n. 1 (Ala.Crim.App. 1984), and although we have spoken to this issue in dicta, Mathis v.State, 497 So.2d 231 (Ala.Crim.App. 1986), we have not addressed this precise issue in an opinion.
In Free v. State, this Court discussed the fact that attempted murder is a specific intent crime, noting:
 "We must caution the prosecution that upon retrial of this case, the State must show proof of the appellant's specific intent to murder the person named in the indictment.
 "`In Simpson v. State, 59 Ala. 1 (1877) discussing the crime of assault with intent to murder, the Supreme Court stated:
 "`". . . The offense charged must be proved, and an essential element of the present offense is not only an assault with intent to murder, but the specific intent to murder Ford, the person named in the indictment. If the intent was to murder another, or if there was not the specific intent to murder Ford, there can not be a conviction of the aggravated offense charged, though there may be of the minor offense of assault or of assault and battery. . . ." (Citations omitted.)
"`Furthermore, at 12, the Court said: *Page 171 
 "`". . . The true principal is, that the particular intent, the intent to murder the person assailed is [a] matter of fact, about which the law raises no presumptions, and indulges no inferences . . ." (Citations omitted.)
 "`Simply put, the doctrine of transferred intent has no application to the offense of assault with intent to murder. Consequently, a general felonious intent, by implication of law, which will convert the killing of a human being into murder application to the instant offense. The Supreme Court stated in Simpson, supra, at 18:
 "`". . . It is excluded by the terms of the statute, which include only direct assaults on the person of the party it is averred there was the intent to murder. If in fact there was not the intent to murder him, whether there was a general felonious intent, or an intent to do harm to some other individual, is not important — there can be no conviction of the aggravated offense. . . ."' (Citations omitted.) (Footnote added)."
 "Coleman [v. State, 373 So.2d 1254, 1257
(Ala.Crim.App. 1979)].
 "It is well settled that intent may be presumed from the use of a deadly weapon and the character of the assault. Chaney [v. State], 417 So.2d 625
[(Ala.Crim.App. 1982)]. However, this evidence must be sufficient to allow the jury to conclude, by fair inference, that the appellant was shooting at the person (named in the indictment) in particular with the intent to murder him."
Free, 455 So.2d at 147-48 (footnote omitted).
In Mathis v. State, 497 So.2d 231 (Ala.Crim.App. 1986), this Court held that the doctrine of transferred intent is applicable in prosecutions for assault and battery. However, in dicta, it also cited to Free in a footnote, stating,
 "However, the doctrine has no application to specific intent crimes such as our former offense of assault with intent to murder, see Coleman v. State, 373 So.2d 1254 (Ala.Cr.App. 1979), and our present offense of attempted murder, see Free v. State, 455 So.2d 137 (Ala.Cr.App.), cert. denied, 455 So.2d 137
(Ala.Cr.App. 1984)."
497 So.2d at 232 n. 1.
We find the following reasoning from the Supreme Court of California, adopting the rationale of the Maryland Court of Appeals, to be persuasive:
 "We should also distinguish between a completed murder and attempted murder regarding transferred intent. Someone who in truth does not intend to kill a person is not guilty of that person's attempted murder even if the crime would have been murder — due to transferred intent — if the person were killed. To be guilty of attempted murder, the defendant must intend to kill the alleged victim, not someone else. The defendant's mental state must be examined as to each alleged attempted murder victim. Someone who intends to kill only one person and attempts unsuccessfully to do so, is guilty of the attempted murder of the intended victim, but not of others.
 "The Maryland Court of Appeals has also considered this question and reached the same conclusion. It drew an apt analogy between transferred intent and the felony murder rule, which imposes murder liability for a death that occurs during the commission of certain felonies. (See generally People v. Hansen (1994) 9 Cal.4th 300, 308
[36 Cal.Rptr.2d 609, 885 P.2d 1022].) `Both doctrines [transferred intent and felony *Page 172 
murder] are used to impose criminal liability for unintended deaths. . . . Clearly, there is no crime of attempted felony murder when no death occurs during the course of a felony. . . . Likewise, the doctrine of transferred intent does not apply to attempted murder when there is no death.' (Poe v. State, [341 Md. 523, 529], 671 A.2d [501, 504 (1996)].)
 "In another case, it discussed yet another reason not to apply transferred intent to an inchoate crime like attempted murder. `A related reason why transferred intent cannot properly apply to attempted murder derives from the fact that the crime of attempted murder requires no physical injury to the victim [a circumstance noted in [People v.] Calderon, [232 Cal.App.3d 930, 936, 283 Cal.Rptr. 833, 836 (1991)]]. . . . Assuming an attempted murder scenario where the defendant fires a shot at an intended victim and no bystanders are physically injured, one sees that it is virtually impossible to decide to whom the defendant's intent should be transferred. Is the intent to murder transferred to everyone in proximity to the path of the bullet? Is the intent transferred to everyone frightened and thereby assaulted by the shot? There is no rational method for deciding how the defendant's intent to murder should be transferred.' (Ford v. State, [330 Md. 682, 715-16, 625 A.2d 984, 1000 (1993)].)
 "This concern is real. The world contains many people a murderous assailant does not intend to kill. Obviously, intent to kill one person cannot transfer to the entire world. But how can a jury rationally decide which of many persons the defendant did not intend to kill were attempted murder victims on a transferred intent theory? To how many unintended persons can an intent to kill be transferred? Just as acts with implied malice constitute murder of anyone actually killed, but not attempted murder of others, so, too, acts with the intent to kill one person constitute murder of anyone actually killed, but not attempted murder of others.
 "The conclusion that transferred intent does not apply to attempted murder still permits a person who shoots at a group of people to be punished for the actions towards everyone in the group even if that person primarily targeted only one of them. As to the nontargeted members of the group, the defendant might be guilty of crimes such as assault with a deadly weapon or firing at an occupied vehicle. (See [People v.] Czahara, [203 Cal.App.3d 1468, 1475, 250 Cal.Rptr. 836, 840 (1988)].) More importantly, the person might still be guilty of attempted murder of everyone in the group, although not on a transferred intent theory. The Ford court discussed this last point in explaining why one of its earlier cases (State v. Wilson (1988) 313 Md. 600
[546 A.2d 1041]) correctly affirmed attempted murder convictions even though it erred in relying on transferred intent. `The result in Wilson can best be explained and justified by distinguishing between transferred intent and what is essentially concurrent intent.' (Ford v. State, supra, [330 Md. at 716,] 625 A.2d at p. 1000.)
 "The Ford court explained that although the intent to kill a primary target does not transfer to a survivor, the fact the person desires to kill a particular target does not preclude finding that the person also, concurrently, intended to kill others within what it termed the `kill zone.' `The intent is concurrent . . . when the nature and scope of the attack, while directed at a primary victim, are such that we can conclude the perpetrator intended to ensure harm to the primary *Page 173 
victim by harming everyone in that victim's vicinity. For example, an assailant who places a bomb on a commercial airplane intending to harm a primary target on board ensures by this method of attack that all passengers will be killed. Similarly, consider a defendant who intends to kill A and, in order to ensure A's death, drives by a group consisting of A, B, and C, and attacks the group with automatic weapon fire or an explosive device devastating enough to kill everyone in the group. The defendant has intentionally created a "kill zone" to ensure the death of his primary victim, and the trier of fact may reasonably infer from the method employed an intent to kill others concurrent with the intent to kill the primary victim. When the defendant escalated his mode of attack from a single bullet aimed at A's head to a hail of bullets or an explosive device, the factfinder can infer that, whether or not the defendant succeeded in killing A, the defendant concurrently intended to kill everyone in A's immediate vicinity to ensure A's death. The defendant's intent need not be transferred from A to B, because although the defendant's goal was to kill A, his intent to kill B was also direct; it was concurrent with his intent to kill A. Where the means employed to commit the crime against a primary victim create a zone of harm around that victim, the factfinder can reasonably infer that the defendant intended that harm to all who are in the anticipated zone. This situation is distinct from the "depraved heart" [i.e., implied malice] situation because the trier of fact may infer the actual intent to kill which is lacking in a "depraved heart" [implied malice] scenario.' (Ford v. State, supra, [330 Md. at 716-17] 625 A.2d at pp. 1000-1001, fn. omitted.)."
People v. Bland, 28 Cal.4th 313, 328-30, 121 Cal.Rptr.2d 546, 558-60, 48 P.3d 1107, 1117-18 (2002) (footnote omitted). Seealso Ramsey v. State, 56 P.3d 675 (Alaska Ct. App. 2002); Jonesv. State, 159 Ark. 215, 251 S.W. 690 (1923); State v. Hinton,227 Conn. 301, 630 A.2d 593, 602 (1993); State v. Brady,745 So.2d 954 (Fla. 1999); State v. Williamson, 203 Mo. 591,102 S.W. 519 (1907); People v. Fernandez, 88 N.Y.2d 777,650 N.Y.S.2d 625, 673 N.E.2d 910, 914 (1996); State v. Shanley,20 S.D. 18, 104 N.W. 522 (1905).
For the reasons stated above, the trial court erred by denying Cockrell's motion for a judgment of acquittal, as there was no evidence that Cockrell intended to murder Jerome, the victim; rather, there was only evidence that Cockrell intended to murder Ivey.[2] However, the trial court instructed the jury on the lesser-included offense of first-degree assault, and, although the State presented insufficient evidence to support a conviction for attempted murder, the State presented sufficient evidence to support a conviction for first-degree assault with a deadly weapon, a violation of § 13A-6-20(a)(1), Ala. Code 1975.[3] Therefore, we remand this cause to the trial court for it to enter a judgment on the lesser-included offense and to resentence Cockrell accordingly. See Fletcher, supra.
REVERSED AND REMANDED.
McMILLAN, P.J., and WISE, J., concur. BASCHAB, J., concurs in the result, with opinion. SHAW, J., concurs in the result, without opinion.
[1] Cockrell also objected to the trial court's instructing the jury on transferred intent.
[2] Of course, Cockrell could have been indicted for the attempted murder of Ivey.
[3] The State presented sufficient evidence that Cockrell, "[w]ith intent to cause serious physical injury to another person, [caused] serious physical injury to any person by means of a deadly weapon or dangerous instrument." § 13A-6-20(a)(1), Ala. Code 1975. *Page 174