Rel: June 26, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2025-2026

_____

### CR-2025-0325

_____

### Josephus Darnell Boone

### v.

### State of Alabama

### Appeal from Montgomery Circuit Court
### (CC-19-880)

KELLUM, Judge.

In 2019, a Montgomery County grand jury returned a five-count indictment against Josephus Darnell Boone in relation to a 2017 shooting that resulted in the death of Kelvin Cooley.  Count I of the indictment charged Boone with murder made capital because Cooley was a witness

in a criminal trial. See § 13A-5-40(a)(14), Ala. Code 1975. Count II of the indictment charged Boone with murder made capital because Cooley was inside a vehicle when he was shot. See § 13A-5-40(a)(17), Ala. Code 1975. Count III of the indictment charged Boone with murder made capital because Boone fired his weapon from inside a vehicle. See § 13A-5-40(a)(18), Ala. Code 1975. Count IV of the indictment charged Boone with the attempted murder of Cooley's sister, Shandra, who was with Cooley at the time of the shooting. See §§ 13A-6-2 and 13A-4-2, Ala. Code 1975. Count V of the indictment charged Boone with discharging a firearm into an occupied building. See § 13A-11-61, Ala. Code 1975.

The State dismissed Count II of the indictment, and the jury acquitted Boone of the attempted-murder charge in Count IV of the indictment. The jury found Boone guilty of intentional murder as a lesser-included offense of the capital-murder charge in Count I of the indictment, of capital murder as charged in Count III of the indictment, and of discharging a firearm into an occupied building as charged in Count V of the indictment. The jury sentenced Boone to life imprisonment without the possibility of parole for the capital-murder conviction, and the trial court sentenced Boone to life imprisonment for

2

the intentional-murder conviction and to 20 years' imprisonment for the discharging-a-firearm-into-an-occupied-building conviction.

The evidence adduced at trial indicated the following. In October 2017, Boone's brother, Jacquees, was brought to trial on the charge of attempted murder for the shooting of Cooley's brother, Alondre, which had left Alondre a quadriplegic. On October 23, 2017, the first day of Jacquees's trial, Cooley testified as a State's witness against Jacquees. Testimony at Boone's trial indicated that there was long-standing animosity between the Boone family and the Cooley family stemming from their involvement in illegal drugs and the decision of Cooley's mother to assist police, which had led to multiple shootings between the two families. Specifically, before he shot Alondre, Jacquees had shot at Cooley, causing Cooley to wreck his vehicle. Only a few hours after shooting Alondre, Jacquees went to Cooley's mother's house and started shooting. Cooley and his brother, Marcus, returned fire, and Cooley shot Jacquees during that incident.

As a result of the animosity between the families, there was increased security in and around the courtroom during Jacquees's trial to keep the two families separated. Despite the increased security,

witnesses observed members of the two families exchanging words, including Cooley and Boone's mother, Mercedes. In addition, although the use of cellular telephones was prohibited in the courtroom, Mercedes was observed sending text messages from her cellular telephone during Cooley's testimony. Boone had left the courthouse just before Cooley was called to testify as a witness, and a subsequent examination of Boone's cellular telephone showed that Boone had deleted several text messages and erased his call history from October 20, 2017, forward. The State's theory at Boone's trial was that the deleted text messages had been from Mercedes regarding Cooley's testimony.

After Cooley's testimony, the trial recessed for the day, and Cooley and his sister, Shandra, left in Cooley's Ford Taurus automobile. Shandra testified that, as they drove past the front of the courthouse on Lawrence Street, they saw Alondre with their other brother, Vandrell. Vandrell was gesturing toward them, and Shandra and Cooley believed that Vandrell needed help to get Alondre in his vehicle, so Cooley turned right onto Scott Street and stopped in front of the church on the corner so he could go back and help. As Cooley began to get out of the vehicle, Shandra saw a white Hyundai Sonata automobile with tinted windows

4

driving toward them. Shandra said that she had seen the same vehicle following her and Cooley when they had gone to lunch earlier in the day. The vehicle drove toward them very slowly, which Shandra described as "creeping." (R. 1364.) She said that, in her experience, a "creeping" vehicle indicated that a shooting was about to take place. Shandra saw the driver's window of the vehicle roll down, at which point she recognized Boone as the driver. She also saw someone sitting in the passenger seat, but she was unable to identify that person.

Shandra then heard gunshots. She said that Cooley initially jumped out of the vehicle, but he then leaned back in and pushed her toward the passenger door, telling her to run. According to Shandra, Cooley was holding his side when he leaned back in the vehicle, and, after he pushed her out the door, he grabbed his gun from the center console of the vehicle and returned fire. Shandra ran, taking cover in an alcove of the church. As she ran, Shandra, who said her nickname was "Money," heard someone say, "Hit that b****, Money." (R. 1325.) As the gunshots continued, Shandra saw Cooley run past her and fall to the ground. She also saw Vandrell standing near his vehicle by the courthouse and

5

shooting toward Boone's vehicle as Boone crossed through the intersection of Scott Street and Lawrence Street.

Several people in the area at the time of the shooting testified to hearing the gunshots and seeing Cooley's and Boone's vehicles, but none saw who had fired the first shot.

Cooley was transported to a local hospital, where he later died. Testimony indicated that he had suffered a gunshot to his right flank. The bullet traveled slightly forward and across his abdomen, nicking a vein, an artery, and the pancreas, before lodging in his left flank, where it was removed during surgery at the hospital. There was no stippling around the wound, indicating that the shot had been fired from a distance, and the entrance wound was "atypical," which is generally "caused by the bullet passing through an object before it strikes the skin of the victim," such as glass. (R. 1254.)

Boone fled the area after the shooting and telephoned emergency 911, telling the operator that he had been driving by the courthouse when a Chevrolet Malibu vehicle had pulled up beside him and the driver had started shooting at him. Boone identified Vandrell and Vandrell's "brother" as the people who had shot at him. (State's Exhibit 7.) Boone

6

also told the operator that he returned fire only to defend himself and that he then fled the scene. However, at the beginning of the 911 call, after the call had connected but before the operator spoke, Boone can be heard saying, "M****f**** testified. M****f**** dead." (State's Exhibit 7.) The 911 operator arranged with Boone to have police meet him at a specific location, where they impounded his vehicle and confiscated his firearm.

At the scene, police found multiple shell casings, a bullet inside a nearby church, and a firearm on the ground at the rear of Cooley's vehicle that was later determined to have belonged to Cooley. Forensic testing revealed that 17 of the shell casings at the scene had been fired from Boone's gun, 11 of the shell casings had been fired from Cooley's gun, and 2 of the shell casings had been fired from a different weapon. Testing further showed that the bullet removed from Cooley during surgery had been fired from Boone's gun and that the bullet found inside the church had been fired from Boone's gun. Multiple bullet holes were discovered in the driver's side of both Cooley's vehicle and Boone's vehicle, shell casings were found in each vehicle, and the driver's window in Cooley's vehicle had been shattered. The bullet holes in Cooley's vehicle were at

7

varying trajectories, indicating that the shooter had been moving at the time the shots were fired. In addition, surveillance cameras in the area showed a vehicle that appeared to be Boone's vehicle circling the courthouse for about 30 minutes before the shooting.

Boone asserted at trial, as he did to the 911 operator, that he had acted in self-defense. Horace Rogers testified that he was with Boone in Boone's vehicle at the time of the shooting. According to Rogers, Boone asked him to go with him to the courthouse to show support for Jacquees, and Rogers agreed. As they were driving on Scott Street, Rogers said, they saw Cooley in his vehicle. Boone stopped in the street, and Cooley rolled down the driver's window in his vehicle, saying, "[W]hat's up?" (R. 1704.) According to Rogers, Cooley then pulled his gun out and shot at them. Boone returned fire as they fled the scene. In addition, Boone's mother, Mercedes, testified that, during one of the breaks in the trial, Cooley had told her that he had previously shot her son and that he would shoot the entire Boone family.

## I.

Before addressing the issues Boone raises on appeal, we first take notice that Boone's convictions for capital murder and intentional murder

for the murder of a single victim violate double-jeopardy principles.

Intentional murder is a lesser-included offense of murder made capital because it was committed by the use of a weapon fired from inside a vehicle. See, e.g., Ex parte McGriff, 908 So. 2d 1024 (Ala. 2004) (noting that intentional murder under 13A-6-2 is an essential element of capital murder under 13A-5-40(a)(18)). "A defendant cannot be convicted of both a capital offense and a lesser offense that is included in the capital charge." Adams v. State, 955 So. 2d 1037, 1098 (Ala. Crim. App. 2003), rev'd on other grounds, 955 So. 2d 1106 (Ala. 2005). See also Cooper v. State, 912 So. 2d 1150 (Ala. Crim. App. 2005); Watson v. State, 875 So. 2d 330 (Ala. Crim. App. 2003); Grayson v. State, 824 So. 2d 804 (Ala. Crim. App. 1999), aff'd, 824 So. 2d 844 (Ala. 2001); Simmons v. State, 797 So. 2d 1134 (Ala. Crim. App. 1999); and Borden v. State, 711 So. 2d 498 (Ala. Crim. App. 1997), aff'd, 711 So. 2d 506 (Ala. 1998) (all holding that a defendant cannot be convicted of capital murder under one count of an indictment and intentional murder under another count of an indictment for the murder of a single victim). Moreover, this type of double-jeopardy transgression is jurisdictional. See Watson, supra. Because Boone could not be convicted of both capital murder and intentional murder for

9

Cooley's murder, his conviction and sentence for intentional murder are due to be reversed.  See, e.g., <u>Williams v. State</u>, 104 So. 3d 254, 265 (Ala. Crim. App. 2012) ("The proper remedy when a defendant is convicted of both a greater and a lesser-included offense is to vacate the conviction and the sentence for the lesser-included offense.").

Having determined that Boone's conviction for intentional murder must be reversed, we turn to the issues he raises on appeal, but we address only those issues that apply to his capital-murder conviction and his shooting-into-an-occupied-building conviction.

## II.

Boone contends that the trial court erred in refusing to allow him to present evidence indicating that Cooley had previously been involved in a shooting unrelated to the instant case.

At trial, Boone attempted to present this evidence by questioning Reginald Dabney, who was a detective with the Montgomery Police Department at the time of the crime, about his obtaining a report from the National Crime Information Center ("NCIC") regarding Cooley's

criminal history,[1] which showed that Cooley had shot a third party in an unrelated incident. The State objected, arguing that the NCIC report was inadmissible hearsay and that any evidence of Cooley's involvement in the prior unrelated shooting would be admissible only if Boone had knowledge of that unrelated shooting. Boone argued that the NCIC report fell within an exception to the hearsay rule and that evidence of Cooley's involvement in the unrelated shooting was admissible to support his claim of self-defense. The trial court sustained the State's objection, noting that, if subsequent evidence was presented during trial indicating that Boone was aware of Cooley's involvement in the unrelated shooting, it would allow Boone to present evidence, albeit not in the form of the NCIC report, of that unrelated shooting.

On appeal, Boone reasserts the arguments he presented to the trial court. We find it unnecessary to address the hearsay argument because we conclude that Cooley's involvement in the prior unrelated shooting was inadmissible under Rules 404 and 405, Ala. R. Evid.

Rule 404 provides, in relevant part:

---

[1]The report had been provided to the defense as part of the State's open-file discovery.

11

"(a) Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

"....

"(2) Character of Victim.

"(A) In Criminal Cases. (i) Evidence of a pertinent trait of character of the victim of the crime offered by an accused ....

"....

"(b) Other Crimes, Wrongs, or Acts.

"(1) Prohibited Uses. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

"(2) Permitted Uses. This evidence may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Under Rule 404(a), an accused is generally permitted to present evidence of a victim's character in order to show that the victim acted in conformity with that character on a particular occasion. When an accused asserts self-defense, such evidence is often offered to show that

12

the victim had a character for violence and was the first aggressor. As the Advisory Committee's Notes to that rule explain:

> "In a criminal case, the accused may offer evidence that a victim of an alleged crime had a pertinent trait. Such evidence usually is offered in cases of homicide or assault where the accused pleads self-defense. In these cases, the character evidence is offered as a base from which circumstantially to infer that the victim was the first aggressor."

The method of proving character under Rule 404(a), however, is limited by Rule 405, which provides:

> "(a) Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

> "(b) Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct."

Generally, evidence of the victim's character offered under Rule 404(a) "must be in the form of testimony regarding reputation or testimony stating an opinion, in accordance with Rule 405(a)." Advisory Committee's Notes to Rule 404(a)(2)(A). See also Bohannon v. State, 222 So. 3d 457 (Ala. Crim. App. 2015), aff'd, 222 So. 3d 525 (Ala. 2016), and

_Peraita v. State_, 897 So. 2d 1161 (Ala. Crim. App. 2003), aff'd, 897 So. 2d 1227 (Ala. 2004). This is so because Rule 405(b) plainly limits the use of specific prior acts to show action in conformity therewith to situations in which the person's character is "an essential element of a charge, claim, or defense."

Although the fact that the victim of an assault or homicide has a propensity for violence is certainly relevant to a claim of self-defense insofar as it suggests that the victim was the first aggressor, it is not an _essential element_ of self-defense under § 13A-3-23, Ala. Code 1975. Indeed, "[a] defendant could, for example, successfully assert a claim of self-defense against an avowed pacifist, so long as the jury agrees that the defendant reasonably believed unlawful force was about to be used against him." _United States v. Keiser_, 57 F.3d 847, 857 (9th Cir. 1995). See also _United States v. Gulley_, 526 F.3d 809, 819 (5th Cir. 2008) (holding that the victim's "character was not an essential element of the self-defense claim in the 'strict sense' because a self-defense claim may be proven regardless of whether the victim has a violent or passive character"); _United States v. Gregg_, 451 F.3d 930, 934 (8th Cir. 2006) (holding that "a victim's violent character is not an essential element of

the charge of murder or the defense of self-defense"); and United States v. Smith, 230 F.3d 300, 308 (7th Cir. 2000) (holding that the victim's "character was in no way an essential element of the actual self-defense claim"). Because the victim's character is not an essential element of self-defense, Rule 405(b) does not permit an accused to present evidence of specific instances of the victim's conduct.

We recognize that in Clancy v. State, 886 So. 2d 166 (Ala. Crim. App. 2003), and in Harrington v. State, 858 So. 2d 278 (Ala. Crim. App. 2002), this Court implied that the victim's character for violence is an essential element of self-defense for purposes of Rule 405(b). In Clancy, we made the following statement in passing before concluding that the evidence presented was inadmissible hearsay:

> "Although Rule 405(b), Ala. R. Evid., authorizes the admission of testimony concerning specific instances of a victim's violent conduct in a case where the victim's violent character is essential to a defendant's claim of self-defense, nothing in that rule or in any other Alabama Rule of Evidence or in Alabama caselaw authorizes a defendant claiming self-defense to introduce hearsay testimony concerning alleged specific instances of the victim's violent conduct in order to bolster his self-defense theory."

886 So. 2d at 169. In Harrington, we concluded that evidence of prior specific acts of the victim was inadmissible, not under Rule 405(b), but

15

because the acts in that case were "too remote and irrelevant to be admissible." 858 So. 2d at 293. In neither Clancy nor Harrington did this Court directly address the question whether the victim's character is an essential element of self-defense. The implication, nonetheless, is apparent in each of those cases. See 1 Charles W. Gamble et al., McElroy's Alabama Evidence §§ 33.01(3) n.4 and 63.01(3) n.4 (7th ed. 2020) (noting that Clancy and Harrington both erroneously suggest that a claim of self-defense makes the victim's character an "essential element" so as to allow evidence of specific prior acts of the victim under Rule 405(b)). Therefore, we take this opportunity to overrule Clancy and Harrington to the extent that they suggest that the victim's character is an essential element of self-defense so as to allow evidence of specific instances of conduct on the part of the victim under Rule 405(b).

Under Rule 404(b), character evidence in the form of specific instances of conduct is admissible when offered for purposes other than showing that the person acted in conformity with that character on a particular occasion. When an accused asserts self-defense, specific instances of conduct on the part of the victim showing the victim's character for violence are generally offered to show the accused's state of

16

mind at the time of the crime, i.e., his or her apprehension of harm. However, Rule 404(b) is first and foremost a test of relevancy. See, e.g., Draper v. State, 886 So. 2d 105 (Ala. Crim. App. 2002). Only if the accused had knowledge of the victim's specific instances of conduct would such conduct be relevant to the accused's state of mind. See, e.g., Peraita, 386 So. 3d at 838.

> "Rule 404(a)(2)(A) deals with when character of a person is offered to prove conformity therewith -- i.e., that the victim was the first aggressor. In contrast, the accused may offer the victim's character for some special, material purpose other than to prove conformity. The victim's reputation, for example, may be offered to prove that the accused had reason to expect serious imminent bodily harm. However, such evidence would not be relevant for that purpose without an accompanying showing that the accused knew about the reputation. Similarly, a victim's acts of violence against others, a form of character entirely prohibited by Rule 404(a)(2)(A), may be offered to prove the accused's reasonable apprehension in support of a self-defense claim. The latter evidence, however, would be irrelevant without a showing that the accused was aware of the acts."

1 Gamble et al., McElroy's Alabama Evidence § 33.01(3) (footnotes omitted). Here, there is no indication that Boone had knowledge of

17

Cooley's involvement in the unrelated shooting. Absent such knowledge, Cooley's past conduct was not relevant to Boone's state of mind.[2]

Because Cooley's involvement in a prior unrelated shooting was not admissible under Rules 404 and 405, the trial court did not err in excluding that evidence.

## III.

Boone contends that the trial court erred in denying his motions for a judgment of acquittal, made at the close of the State's case and at the close of all the evidence, because, he says, the evidence was insufficient to sustain his convictions.

Although Boone accurately sets out the law regarding the sufficiency of the evidence and provides citations to the record, the entirety of his "argument" in brief reads: "Here, the issue is not merely the credibility of the State's witnesses, which is appallingly deficient, but that testimony was insufficient to establish a prima facie case." (Boone's

---

[2]To the extent that Boone also argues on appeal that Cooley's involvement in the unrelated shooting was relevant to explain to the jury why there were increased security measures during Jacquees's trial, Boone did not present this specific argument to the trial court. Therefore, it was not properly preserved for review. See, e.g., Newsome v. State, 570 So. 2d 703, 716 (Ala. Crim. App. 1989) ("Review on appeal is limited to review of questions properly and timely raised at trial.").

18

brief, p. 30.) We cannot say that this single, conclusory statement complies with Rule 28(a)(10), Ala. R. App. P., which requires "[a]n argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor." In any event, we have reviewed the record, and viewing the evidence in a light most favorable to the State, as we must, see, e.g., Gavin v. State, 891 So. 2d 907 (Ala. Crim. App. 2003), we conclude that the evidence, as set out at the beginning of this opinion, was more than sufficient to sustain Boone's convictions for capital murder and shooting into an occupied building.

IV.

Boone also contends that the trial court erred in refusing his requested jury instructions on reckless manslaughter and heat-of-passion (provocation) manslaughter as lesser-included offenses of capital murder and on reckless endangerment as a lesser-included offense of shooting into an occupied building.

> "'A person accused of the greater offense has a right to have the court charge on lesser included offenses when there is a reasonable theory from the evidence supporting those lesser included offenses.' MacEwan v. State, 701 So. 2d 66, 69 (Ala. Crim. App. 1997). An accused has the right to have the jury charged on '"any material hypothesis which the evidence in his favor tends to establish."' Ex parte Stork, 475 So. 2d 623, 624 (Ala. 1985). '[E]very accused is entitled to have

charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however[] weak, insufficient, or doubtful in credibility,' Ex parte Chavers, 361 So. 2d 1106, 1107 (Ala. 1978), 'even if the evidence supporting the charge is offered by the State.' Ex parte Myers, 699 So. 2d 1285, 1290-91 (Ala. 1997), cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998). However, '[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.' § 13A-1-9(b), Ala. Code 1975. 'The basis of a charge on a lesser included offense must be derived from the evidence presented at trial and cannot be based on speculation or conjecture.' Broadnax v. State, 825 So. 2d 134, 200 (Ala. Crim. App. 2000), aff'd, 825 So. 2d 233 (Ala. 2001), cert. denied, 536 U.S. 964, 122 S.Ct. 2675, 153 L.Ed.2d 847 (2002). '"A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury."' Williams v. State, 675 So. 2d 537, 540-41 (Ala. Crim. App. 1996), quoting Anderson v. State, 507 So. 2d 580, 582 (Ala. Crim. App. 1987)."

Clark v. State, 896 So. 2d 584, 641 (Ala. Crim. App. 2003).

As noted above, Boone asserted that he had acted in self-defense when he shot Cooley. In doing so, Boone admitted that his conduct in firing his weapon was intentional. See, e.g., Johnson v. State, [Ms. CR-2023-0911, December 19, 2025] ___ So. 3d ___ (Ala. Crim. App. 2025) (noting that a claim of self-defense serves as an admission of intentional conduct). One cannot recklessly defend oneself. "By pleading self-

defense, [Boone] admitted that his conduct was intentional, and he foreclosed any possibility that his conduct was reckless." <u>Cockrell v. State</u>, 890 So. 2d 168, 170 (Ala. Crim. App. 2003), aff'd, 890 So. 2d 174 (Ala. 2004). Therefore, Boone was not entitled to a jury instruction on reckless manslaughter as a lesser-included offense of capital murder.

Moreover, the only true question in this case was who fired the first shot, Boone or Cooley. There was no evidence presented at trial, by the State or the defense, indicating that either Cooley or Boone engaged in any conduct <u>before the shooting began</u> that would constitute legal provocation recognized by law. If Boone fired the first shot, he was guilty of capital murder. On the other hand, if, as Boone alleges, Cooley fired the first shot, then Boone justifiably acted in self-defense. Under the evidence presented, Boone was either guilty of capital murder or not guilty of capital murder by way of self-defense. "'When the evidence clearly shows the appellant either was guilty of the offense charged or is innocent, the charge on a lesser included offense is not necessary or proper.'" <u>Broadnax v. State</u>, 825 So. 2d 134, 201 (Ala. Crim. App. 2000) (quoting <u>Breckenridge v. State</u>, 628 So. 2d 1012, 1017 (Ala. Crim. App. 1993)), aff'd, 825 So. 2d 233 (Ala. 2011). Cf., <u>Garrick v. State</u>, 589 So. 2d

21

760 (Ala. Crim. App. 1991) (holding that the trial court did not err in refusing to instruct the jury on a lesser-included offense when the evidence established that the defendant was either guilty of the charged crime or not guilty based on the defense of entrapment); Gray v. State, 482 So. 2d 1318 (Ala. Crim. App. 1985) (holding that the trial court did not err in refusing to instruct the jury on a lesser-included offense when the evidence established that the defendant was either guilty of the charged crime or not guilty by reason of insanity); and Mullis v. State, 545 So. 2d 205 (Ala. Crim. App. 1989) (holding that the trial court did not err in refusing to instruct the jury on a lesser-included offense when the evidence established that the defendant was either guilty of capital murder or not guilty based on the defendant's alibi defense). Therefore, Boone was not entitled to a jury instruction on heat-of-passion (provocation) manslaughter as a lesser-included offense of capital murder.

As for Boone's argument that he was entitled to an instruction on reckless endangerment as a lesser-included offense of shooting into an occupied building, the record reflects that Boone did not request such an instruction. Boone requested an instruction on reckless endangerment

as a lesser-included offense of the attempted-murder charge, but his only request with respect to the shooting-into-an-occupied-building charge was that the trial court instruct the jury on criminal mischief in the third degree. (C. 415-18; R. 1857-58.) "No party may assign as error the court's giving or failing to give a written instruction ... unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection." Rule 21.3, Ala. R. Crim. P. Therefore, this specific issue was not properly preserved for review. Moreover, even if it had been preserved, Boone was not entitled to a jury instruction on reckless endangerment as a lesser-included offense of shooting into an occupied building because, under the evidence presented, either Boone fired the first shot and was guilty of shooting into an occupied building or Cooley fired the first shot and, in justifiably defending himself, Boone inadvertently shot into an occupied building and was not guilty of any crime. Cf. Gettings v. State, 32 Ala. App. 644, 29 So. 2d 677 (1947) (noting that if a person acting in self-defense shoots at one person but inadvertently kills an innocent bystander instead, the person is guilty of no crime at all).

V.

Based on the foregoing, we affirm Boone's convictions and sentences for capital murder and shooting into an occupied building. For the reasons stated in Part I of this opinion, we reverse Boone's conviction and sentence for intentional murder, and we remand this cause for the trial court to set aside that conviction and sentence. No return to remand need be filed.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Windom, P.J., concurs; Minor and Anderson, JJ., concur in part and concur in the result, with opinions; Cole, J., concurs in the result.

MINOR, Judge, concurring in part and concurring in the result.

I concur in all parts of the Court's opinion except for Part II; as to Part II, I concur in the result.

ANDERSON, Judge, concurring in part and concurring in the result.

I concur in all but Part II of the main opinion, with which I concur in the result.

I cannot join in the main opinion's analysis regarding Josephus Boone's challenge to the Montgomery Circuit Court's exclusion of National Crime Information Center ("NCIC") criminal-history records pertaining to Kelvin Cooley because it ignores the parties' briefs on the issue presented and "overrules" obiter dictum contained in Clancy v. State, 886 So. 2d 166 (Ala. Crim. App. 2003), and Harrington v. State, 858 So. 2d 278 (Ala. Crim. App. 2002). Overruling cases without the benefit of briefing on the need for a precedential course correction, or even a request from either party that we do so, is a practice in which courts should rarely engage. Among other things, limiting dicta in this Court's prior decisions by overruling them needlessly complicates their use by counsel in cases in which the prior decisions' holdings are material to the issue presented.

It is enough to say that Boone failed to lay a proper foundation for the admission of the criminal-history records. NCIC Interstate Identification Index files are records belonging to the federal

government. See, e.g., 28 U.S.C. § 534. Appropriate use of such records requires acquiescence to the rules governing their use as established by the United States Department of Justice and the Federal Bureau of Investigation. Among those rules is the requirement that any results obtained through use of the NCIC Interstate Identification Index be positively verified through fingerprint information. See 28 C.F.R. §§ 20.3(s) and 20.31. Such records, therefore, are not records of regularly conducted activities of the Montgomery Police Department, see Rule 803(6), Ala. R. Evid., the rule Boone cites as support for their admissibility. (Boone's brief at 17.) Additionally, as this Court has previously noted, under the facts presented in other cases, NCIC Interstate Identification Index records are not records of regularly conducted activities of a police department. See J.D.N.B. v. State, [Ms. CR-2024-0211, Nov. 7, 2025] ___ So. 3d ___, ___ (Ala. Crim. App. 2025) (explaining why NCIC stolen-property report was inadmissible under Rule 803(6)); Ingmire v. State, 215 So. 3d 592, 596-97 (Ala. Crim. App. 2016) (holding that NCIC records were not admissible on the record presented to the Court).

Applying the holdings of <u>J.D.N.B.</u> and <u>Ingmire</u> to this case, Boone is merely the latest defendant to have failed to lay a foundation for the admission of NCIC records under Rule 803(6). Moreover, Boone made no proffer when the NCIC records were excluded by the circuit court, and the records themselves do not appear in the record on appeal. There is nothing but a silent record regarding what <u>specific</u> information was contained in the NCIC records, whether any limitation on the use of that information was included in the NCIC documents,[3] or whether Boone was personally aware of Cooley's prior criminal activities. In this case, therefore, the Court does not need to take the path of overruling its prior decisions without the benefit of briefing or a request that we do so to reach a legally correct result.

Finally, I disagree with the main opinion's conclusion that a victim's prior acts of violence cannot ever be an essential element to a defendant's assertion of self-defense. Indeed, courts in other jurisdictions

---

[3]Assuming that a foundation could be laid to establish that the NCIC records, obtained from a federal database, could be "kept in the course of a regularly conducted business activity" of the Montgomery Police Department, any limitation on the use of those records notated on the documents themselves would be pertinent to whether "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Rule 803(6), Ala. R. Evid.

that have addressed the issue squarely have concluded that, in the proper circumstances, specific acts by a victim <u>may</u> be "an essential element of [the defendant's] self-defense claim." <u>State v. Day</u>, 341 S.C. 410, 421, 535 S.E.2d 431, 437 (2000). Under the present circumstances -- when the question has not been squarely presented to this Court, much less fully briefed and argued by the parties -- I would not overrule out-of-hand our prior decisions in <u>Clancy</u> and <u>Harrington</u> based on dicta indicating such a possibility.

To illustrate the flaw in the main opinion's reasoning, consider the defense of entrapment. The Advisory Committee's Notes to Rule 405(b), Ala. R. Evid., use the defense of entrapment to illustrate the sphere of the rule's operation. As the Advisory Committee's Notes explain, invoking the defense of entrapment "make[s] the accused's propensity for committing the kind of act charged an essential element and thereby opens the door to evidence of collateral relevant misconduct." (Citing <u>Jackson v. State</u>, 384 So. 2d 134 (Ala. Crim. App. 1979).).

But the defense of entrapment does not open the door for specific examples of all prior bad acts of a defendant; rather, it opens the door only to relevant and specific acts based on the charged offense. If, for

example, a defendant arrested for unlawful possession of marijuana alleges that he or she was entrapped by an undercover officer or confidential informant -- alleging that he or she was "guilted" into taking marijuana to a beloved, sick relative that he or she believed was dying of cancer but who turned out to be a confidential informant, for example -- only prior instances of that defendant's drug use or drug purchases would be admissible to rebut such a defense. Evidence that such a defendant committed sexual abuse or a prior assault, however, would not be admissible under Rule 405(b) to counter such an entrapment defense. Cf. Quinn v. State, 424 So. 3d 311, 322 (Miss. Ct. App. 2025) (holding that evidence of prior act not admissible as "essential element" of self-defense claim when it "did not involve a gun or even threats of physical harm" (cleaned up)).

Similarly, a defendant who claims self-defense for his or her use of deadly physical force must show an honest and reasonable belief that he or she faced an imminent use of deadly physical force. See King v. State, 478 So. 2d 318 (Ala. Crim. App. 1985). When a defendant presents evidence establishing personal knowledge of a victim's prior violent acts, offering specific proof of such prior acts could be highly probative on the

issue of whether the defendant's belief that self-defense was warranted was both honest and reasonable under the circumstances.

> "Evidence of the victim's specific instances of violent behavior may be admissible if the defendant raises a self-defense claim. In those circumstances, such specific acts generally would be admissible to show the reasonableness of the defendant's fear of the victim and thus the validity of the self-defense claim. In those circumstances, however, where the purpose of the evidence is to show that the defendant had reason to apprehend harm, at the time of the encounter the defendant must have had knowledge of the victim's previous violent acts."

1 Barbara E. Bergman et al., Wharton's Criminal Evidence § 4:23 (15th ed.). While our prior decisions in Clancy and Harrington did not confront this issue squarely, they recognized this possibility by implication.

Because the arguments of the parties regarding the issue presented in Part II of the main opinion do not warrant the Court's adoption of the blanket holding that "the victim's character is not an essential element of self-defense" such as to "permit an accused to present evidence of specific instances of the victim's conduct" under Rule 405(b), ___ So. 3d at ___, I concur only in the result of Part II. Perhaps that is true in this case – in which Boone did not offer any evidence indicating that he was aware of Cooley's prior violent act and did not make a sufficient proffer to present an adequate record for reviewing this claim -- but that

31

statement might not be true in a case in which the defendant was aware of the victim's prior acts of violence and evidence of such prior acts would be probative of the defendant's state of mind. Because this case does not present us with the opportunity to resolve that hypothetical question of law, I concur only in the result reached in Part II of the main opinion.